PEOPLE v JEFFERSON

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—APPEAL AND ERROR—MIS-
CARRIAGE OF JUSTICE—OBJECTIONS—STATUTES—COURT RULES.

Error relating to jury instructions has not been preserved for
review where defense counsel not only failed to object, but
affirmatively expressed satisfaction with the charge, and where
no miscarriage of justice occurred (MCLA 768.29; MSA 28.1052,
GCR 1963, 516.2).

2. CRIMINAL LAW—EVIDENCE—CROSS-EXAMINATION—OBJECTIONS—
SPECIFICITY OF OBJECTION—TESTIMONY OF CODEFENDANT'S COUN-
SEL—COURT RULES.

A trial court properly allowed, over an objection by a defendant's
attorney, a witness's answer made in response to a statement
made by counsel for a codefendant during cross-examination of
the witness where there was no specificity of grounds for the
objection, making it impossible to determine whether the objec-
tion was to the answer on the part of the witness or to the
testifying by the attorney for the codefendant (GCR 1963,
507.5).

3. CRIMINAL LAW—EVIDENCE—HEARSAY TESTIMONY—HARMLESS ER-
ROR—FACTORS.

Courts, in determining whether hearsay testimony was harmless
beyond a reasonable doubt, look to such factors as (1) the
quantum of other evidence indicating defendant's guilt, (2) how
tenuous the remaining evidence against the defendant is, and
(3) whether the hearsay testimony is merely cumulative with
the other evidence against the defendant.

Appeal from Oakland, William J. Beer, J. Sub-
mitted March 1, 1977, at Lansing. (Docket No.
27040.) Decided August 8, 1977.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error §§ 623, 627, 719.
    75 Am Jur 2d, Trial §§ 727, 908, 909.
[2] 75 Am Jur 2d, Trial § 167.
[3] 75 Am Jur 2d, Trial §§ 443, 752.

Earl N. Jefferson was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *James L. McCarthy,* Assistant Appellate Counsel, for the people.

*McFarland, Schmier, Stoneman and Singer,* for defendant on appeal.

Before: DANHOF, C. J., and T. M. BURNS and J. E. McDONALD,* JJ.

J. E. McDONALD, J. Defendant appeals as of right from a 4-to-16 year sentence for armed robbery as the result of a jury verdict of guilty, following a trial that lasted seven days in July of 1975 when defendant, with two co-defendants, were tried on a charge that arose from the robbery of Garlock's Drug Store in Pontiac, Michigan.

Defendant contends that the trial court committed reversible error by failing to instruct the jury that in a case based on circumstantial evidence, the facts proven must not only point to defendant's guilt, but must be inconsistent with any other reasonable hypothesis upon which defendant's innocence may be maintained.

It appears that the trial court gave the instruction on this item specifically requested by defendant and there was no objection to the given instruction.

GCR 1963, 516.2 states in part:

"No party may assign as error the giving or the failing

---

* Circuit judge, sitting on the Court of Appeals by assignment.

to give an instruction unless he objects thereto before the jury retires to consider the verdict."

MCLA 768.29, MSA 28.1052 states in part:

"The failure of the court to instruct on any point of law shall not be grounds for setting aside the verdict of the jury unless such instruction is requested by the accused."

Defense counsel not only failed to object to the instruction in the lower court, but affirmatively expressed satisfaction with the charge and therefore, in the absence of an objection, the claimed error has not been preserved for review. *People v Wheat,* 55 Mich App 559; 223 NW2d 73 (1974).

There was testimony at the trial that the robbers had worn nylon stockings over their heads as masks.

Defendant claims his Sixth Amendment rights to confront witnesses against him was violated when counsel for another of the codefendants made a statement during cross-examination of a prosecution witness that the codefendant had told the witness that the codefendant and the defendant "did wear stockings".

We quote from the transcript the direct examination of a witness for the prosecution:

"*Q [Mr. Case, Assistant Prosecuting Attorney.]* What was that conversation you had?

"*A [Miss Simpson, witness.]* Well, we were sittin' in the police car and one of the detectives went to the car we were driving and pulled out a stocking.

"Q That was from the car you were riding in?

"A Yes.

"Q And so did you then ask anybody a question?

"A Yes, I did.

"Q Who did you ask?

"A Jimmy.

"Q What did you ask?

"A I asked him were they wearing stockings.

"Q What did he say?

"A He said—He called—I can't be exact on the names that he called but he called, he said two of them were and one wasn't.

"Q Did he mention any names?

"A Yes, he did but I couldn't say which at the moment. I couldn't say which one he said was wearing the stocking, though.

"Q So you asked him, Jimmy Traylor whether or not they were wearing stockings?

"A Yes.

"Q And Jimmy Traylor said to you that two of them were and one was not?

"A Yes."

There were no further questions by the prosecutor on this item and no objection from any defense counsel.

The following is from the cross-examination by Mr. Curry, attorney for defendant Jimmy Traylor:

"Q Now the police officer stopped you all and one of the police officers removed a stocking item from the front seat of the car, am I correct?

"A Yes.

"Q And he removed the stocking item, not from the side Jimmy was sitting on but from the side your brother was sitting on?

"A Yes.

"Q You saw the officer remove that item?

"A Yes, I did.

"Q Have you ever seen your brother with a stocking before?

"A No.

"Q Does anyone in your house wear stockings on their head?

"A No.

"Q Have you ever seen a black person wearing a stocking on his head?

"A Yes.

"Q Do you have an idea why black people wear stockings on their heads?

"A No.

"Q Would it be to keep the hair in place?

"A Yes.

\* \* \*

"Q \* \* \* Isn't it a fact that no time on the day in question Jimmy Traylor told you he was in any way connected with the robbery?

"A No, he didn't.

"Q Isn't it a fact that Jimmy Traylor never told you even when you were in the car with the police officer that he used a mask to carry out a robbery of any sort?

"A Do you mean with me when me and Jimmy and my brother was in the police car?

"Q Right. He just said that he, him and Earl did. Bobby didn't.

"MR. PENTA [Attorney for defendant Jefferson.] I am going to object.

"THE COURT: She can answer.

"Q He never—He told you he did, Earl did but Boby [sic] didn't?

"A Yes.

"Q That's all he said?

"A Yes.

"Q The reason he said that was because you asked him a question?

"A Yes.

"Q He did not voluntarily tell you he did, Earl did but Bobby didn't?

"A No.

"Q He didn't tell you he used a stocking to carry out the robbery, did he?

"A No.

"Q He didn't tell you he was participating in a robbery with anyone else, did he?

"A No.

"Q It was you who brought the idea of the stocking, am I correct?

"A Yes.

"Q Why did you do that?                              ᵒ

"A When I seen Detective Hawk pull it from the car.

"Q And for some reason the concept robbery came to your mind. Was Detective Hawk the first person to mention robbery to you?

"A Yes.

\* \* \*

"Q So far as you know the stocking didn't belong to Jimmy, right?

"A Right.

"Q Do you know whether or not it belonged to your brother?

"A Well, I—No, I couldn't. I know it didn't belong because we all came out of the house together.

\* \* \*

"Q At this point in time you had no idea that a robbery had taken place or put in differently, that the people carried out the robbery used stockings?

"A No.

"Q When you were talking about they, who were the they you had in mind?

"A No one specific. I just—something that came to my mind.

\* \* \*

"Q For the last time Jimmy never did say he used the stocking, did he?

"A No, he didn't.

"Q And you never asked him anymore questions regarding the stocking?

"A No.

\* \* \*

"Q Is it possible you may have misunderstood what Jimmy was saying to you when he responded to you about the question about the stocking?

"A No."

The following is from the cross-examination by Mr. Penta. The witness is Miss Simpson:

"Q Do you recall from your statement or from that previous time that we were in court together what time you said Earl Jefferson came and asked you for that stocking?
"A Was about 10:00. High Rollers—10:45.

\* \* \*

"Q It was 10:40?
"A Yes.
"Q Was a white stocking?
"A Yes.
"Q The kind you wear on your uniform?
"A Yes.
"Q Do you recall when you were inside the car just after you were arrested by the police that the police officer—Do you recall testifying that the police officer went up under the seat and retrieved that stocking?
"A Yes.
"Q Is that true?
"A Yes.
"Q Was what you just told me before true?
"A Yes.
"MR. PENTA: No further questions."

Defendant claims that the situation created during the examination of witness Simpson is governed by the case of *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968); and *People v Berryman,* 43 Mich App 366; 204 NW2d 238 (1972). On review of the transcript as quoted above, we do not agree. We do not believe that *Bruton* applies, for *Bruton* spoke of the deliberate injection into a trial of damaging hearsay by the prosecution. We certainly do not have that situation here. There was nothing in the answer given by the witness to the questions by the prosecutor that was damaging to defendant.

As a matter of fact, defendant's name was never mentioned during this exchange. There was no objection by defendant's counsel to the questions by the prosecutor.

The testimony that the defendant now seeks to elevate to the level of *Bruton* was testimony by the attorney for codefendant Traylor. The announcement of the names was by the attorney. The attorney for Jefferson made the statement, "I am going to object". However, it is impossible now to tell whether he was objecting to the defense attorney for Traylor testifying, or whether he was objecting to the answer on the part of the witness. With no specificity of grounds for the objection, we do not believe that the circuit court was in error in taking the answer. See GCR 1963, 507.5.

Furthermore, there was lengthy cross-examination of witness Simpson by attorney for defendant Jimmy Traylor and there was also cross-examination by defense attorney for defendant Jefferson.

In its charge to the jury, the trial court gave verbatim the cautionary instruction concerning statements made by a codefendant as requested by defendant's counsel and there was no objection made. In determining whether the hearsay testimony was harmless beyond a reasonable doubt, the courts of this state have looked to such factors as the quantum of other evidence indicating defendant's guilt, how tenuous the remaining evidence against the defendant is, and whether the hearsay testimony is merely cumulative with the other evidence against the defendant. *People v Berryman, supra.*

In the instant case, the evidence against defendant is all circumstantial. However, there is a considerable amount of it. Shortly before the crime, the defendant had asked Mildred Simpson for a nylon stocking, and she gave him one which

matched the description of what one of the robbers was reported to have worn. Police officers followed footprints from the point where witnesses had stated the alleged robbers were seen to the house in which defendant was found. When defendant was found, shortly after the robbery, he was hidden under a mattress in the attic or storage area of the home of a neighbor who did not know the defendant was in her attic. Near the defendant in the attic was a shotgun similar to the one used in the robbery and a sum of money. The neighbor did not own a shotgun or keep money in the attic. There was ample evidence without the hearsay statement to convict defendant beyond a reasonable doubt. Furthermore, in the instant case, the judge did give a cautionary instruction concerning this testimony.

It is true that the jury requested this portion of the testimony of witness Simpson read to them and after consulting with counsel, the court advised the jury that he would not read a portion of any witness's testimony. Shortly thereafter, the jury returned with the verdict. We are not able to say that the request is evidence that the jury considered the testimony on this issue by witness Simpson to be crucial.

After a thorough review of the entire trial transcript of this matter, we do not believe the incident complained of was sufficiently damaging to warrant reversal. *People v Fields,* 49 Mich App 652; 212 NW2d 612 (1973).

We believe any claimed error growing out of this incident in the trial to be harmless error beyond a reasonable doubt consistent with the standard set out in *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972).

Affirmed.