PEOPLE v SOMMERVILLE

Docket No. 44034. Submitted June 24, 1980, at Detroit.—Decided
October 6, 1980. Leave to appeal applied for.

Patrick C. Sommerville was convicted of first-degree criminal
sexual conduct, St. Clair Circuit Court, Halford I. Streeter, J.
He appeals, alleging 1) that the trial court erred in omitting
certain elements of the crimes charged in its instructions to the
jury, 2) that the trial court's instruction on cunnilingus failed
to indicate the need for penetration, 3) that the admission of
testimony regarding the complainant's character and defen-
dant's veracity constituted error, 4) that the trial court erred in
admitting hearsay evidence, 5) that the evidence presented
regarding first-degree criminal sexual conduct was insufficient,
6) that the jury's verdict is void for uncertainty, 7) that the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 65 Am Jur 2d, Rape § 2.
[3] 5 Am Jur 2d, Appeal and Error § 891.
[4] 5 Am Jur 2d, Appeal and Error § 894.
[5] 65 Am Jur 2d, Rape § 3.
   70 Am Jur 2d, Sodomy §§ 5, 6.
   What constitutes penetration in prosecution for rape or statutory
   rape. 76 ALR3d 163.
[6] 70 Am Jur 2d, Sodomy §§ 5, 6.
[7, 9] 81 Am Jur 2d, Witnesses § 533.
[8] 5 Am Jur 2d, Appeal and Error § 797.
[10] 81 Am Jur 2d, Witnesses § 434.
[11] 29 Am Jur 2d, Evidence § 346.
[12] 5 Am Jur 2d, Appeal and Error § 624.
[13] 29 Am Jur 2d, Evidence § 708.
[14] 5 Am Jur 2d, Appeal and Error § 800.
[15] 65 Am Jur 2d, Rape § 94.
[16] 30 Am Jur 2d, Evidence § 1170.
[17] 76 Am Jur 2d, Trial § 1141.
[18] 29 Am Jur 2d, Evidence § 370.
   30 Am Jur 2d, Evidence § 1104.
[19-21] 21 Am Jur 2d, Criminal Law § 529.
   Defendant's right to disclosure of presentence reports. 40 ALR3d
   681.
[22] 21 Am Jur 2d, Criminal Law § 533.

admission of blood-type evidence constitutes error, 8) that he was not effectively represented by counsel, 9) that he was denied a fair trial, and 10) that since he was not permitted to personally review his presentence report, he is entitled to be resentenced. *Held:*

1. Defense counsel failed to object to the jury instructions as given and noted on the record that he was satisfied with them. Thus, absent a finding of manifest injustice, the issue was not preserved for review. The record reveals that the instructions, on the whole, sufficiently informed the jury of the elements necessary to convict defendant. No manifest injustice is found.

2. Cunnilingus is nowhere defined to require penetration. Its inclusion in the definition of sexual penetration under first-degree criminal sexual conduct is based on the belief that it is as offensive to a victim and to society as is forcible penetration.

3. The admission of testimony as to the complainant's character which referred to her religious beliefs did not constitute a compelling reason to attach more credence to her own testimony than otherwise and was not solicited by the prosecution. The admission of testimony referring to drug or alcohol use by the complainant, which possibly could be construed to have been directed solely at her ability to identify her assailant and to clearly recall the assault, comes close to constituting error, but such error was harmless. Defense counsel did not object to any testimony regarding defendant's veracity when admitted, and the issue is not preserved for review, no manifest injustice having been found.

4. The testimony of two of the witnesses which defendant contends was hearsay was not objected to by his counsel upon admission. A review of the record reveals no manifest injustice to defendant resulted from its admission, and, thus, the issue is not preserved for review. However, the testimony of a detective verifying complainant's trial testimony constituted error, but was harmless beyond a reasonable doubt.

5. Complainant's testimony at trial was sufficient to establish first-degree criminal sexual conduct.

6. The record reveals that the verdict of the jury was not void for uncertainty.

7. Any error interjected into defendant's trial by the admission of blood-type evidence was harmless beyond a reasonable doubt.

8. Defendant was adequately represented by counsel.

9. Defendant was not denied a fair trial.

10. Defendant has no absolute right to review his presentence

report. Defense counsel read and approved defendant's presentence report and added nothing. Defendant did not request personal review of the report on the record although given an opportunity and is, thus, not entitled to be resentenced.

Affirmed.

1. CRIMINAL LAW — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — STATUTES.

A person is guilty of criminal sexual conduct in the first degree if he engages in sexual penetration with another person and if he causes personal injury to the victim and force or coercion is used to accomplish the penetration (MCL 750.520b[1][f]; MSA 28.788[2][1][f]).

2. CRIMINAL LAW — SECOND-DEGREE CRIMINAL SEXUAL CONDUCT — STATUTES.

A person is guilty of criminal sexual conduct in the second degree if he engages in sexual conduct with another person and causes personal injury to the victim and force or coercion is used to accomplish the sexual contact (MCL 750.520c[1][f]; MSA 28.788[3][1][f]).

3. APPEAL — JURY INSTRUCTIONS — PRESERVATION OF ISSUE FOR APPEAL — MANIFEST INJUSTICE.

A defect in instructions to a jury is not preserved for appeal where counsel fails to object to the instructions as given and notes on the record that he is satisfied therewith absent a finding of manifest injustice.

4. APPEAL — JURY INSTRUCTIONS — ELEMENTS OF OFFENSE — CRIMINAL LAW.

Jury instructions must be read as a whole where challenged on appeal, and the existence of a verdict form correctly listing each element of the charged and lesser included offenses may also be considered in resolving the issue as to whether a jury was sufficiently informed of the elements necessary for conviction of a defendant on each count of the charges.

5. CRIMINAL LAW — SEXUAL PENETRATION — WORDS AND PHRASES — STATUTES.

Sexual penetration means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required (MCL 750.520a[h]; MSA 28.788[1][h]).

6. CRIMINAL LAW — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — INCLUDED ACTS — STATUTES.

Cunnilingus and fellatio are included in the definition of sexual penetrations and under certain enumerated circumstances constitute first-degree criminal sexual conduct due not to intrusion or penetration of the genital or anal openings of one person by another, but because each act is as offensive to a victim and to society as is forcible penetration (MCL 750.520a[h]; MSA 28.788[1][h]).

7. EVIDENCE — RELIGIOUS BELIEFS OR OPINIONS — IMPAIRMENT OR ENHANCEMENT OF CREDIBILITY — RULES OF EVIDENCE.

Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that, by reason of the nature of such beliefs or opinions, the credibility of the witness is impaired or enhanced (MRE 610).

8. WITNESSES — RELIGIOUS BELIEFS AND OPINIONS — ERROR.

Admission of a statement by a witness regarding a party's religious beliefs does not constitute reversible error where the fact of the party's religious affiliation was known to the jury prior to such testimony and the testimony did not constitute a compelling reason to attach more credence to the testimony of the party than otherwise.

9. PROSECUTING ATTORNEYS — WITNESSES — RELIGIOUS BELIEFS — STATUTES.

Deliberate questioning of a witness by a prosecutor regarding the religious beliefs of the witness or another witness or defendant is expressly forbidden by statute (MCL 600.1436; MSA 27A.1436).

10. PROSECUTING ATTORNEYS — RELIGIOUS BELIEFS — CAUTIONARY REMARKS.

A prosecutor has no duty to caution a witness against making a statement regarding a party's religious beliefs.

11. EVIDENCE — EVIDENCE OF TRUTHFUL CHARACTER — ADMISSIBILITY — RULES OF EVIDENCE.

Evidence of truthful character of a witness is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise (MRE 608[a]).

12. APPEAL — ATTACK ON CHARACTER OF WITNESS — PRESERVATION OF ISSUE FOR APPEAL — MANIFEST INJUSTICE.

An attack on a defendant's character for truthfulness by a prosecutor during cross-examination will not be reviewed on

appeal where defense counsel fails to raise an objection at trial absent a finding of manifest injustice; and such injustice will not be found where, upon review of the record, any error was not such as to result in the finding that, absent such error, even one juror might have voted to acquit the defendant.

13. EVIDENCE — HEARSAY — EXCITED UTTERANCES — RULES OF EVIDENCE.

A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition is not excluded by the hearsay rule even though the declarant is available as a witness (MRE 802, 803[2]).

14. APPEAL — HEARSAY TESTIMONY — HARMLESS ERROR — STANDARD OF REVIEW.

A reviewing court, in determining whether error in the admission of hearsay testimony was harmless beyond a reasonable doubt, should look to the quantum of other evidence indicating a defendant's guilt, how tenuous is the remaining evidence against the defendant, and whether such testimony was merely cumulative with the other evidence against the defendant.

15. CRIMINAL LAW — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — CORROBORATIVE TESTIMONY — STATUTES.

A complainant's testimony need not be corroborated in first-degree criminal sexual conduct prosecutions (MCL 750.520h; MSA 28.788[8]).

16. CRIMINAL LAW — CRIMINAL PROCEDURE — DUE PROCESS — EVIDENCE OF GUILT.

Due process requires that a prosecutor introduce sufficient evidence which could justify a trier of fact in reasonably concluding that a defendant is guilty beyond a reasonable doubt before a defendant can be convicted of a criminal offense.

17. JURY — VERDICT — WRITTEN FORM — SUBSTANTIVE INTENT.

The written form of a verdict should not be exalted over the substantive intent of a jury, and thus, a verdict is not void for uncertainty where the jury's intent can be clearly deduced by reference to the pleadings, the court's charge, and the entire record in a given case.

18. CRIMINAL LAW — EVIDENCE OF BLOOD TYPE — HARMLESS ERROR.

Admission of evidence of blood type which serves to include a defendant in a class of possible assailants, thereby increasing the probability of his guilt without connecting him in any way

to the charged offense, constitutes error, but does not require reversal where such error is harmless beyond a reasonable doubt.

19. COURTS — CRIMINAL PROCEDURE — PRESENTENCE REPORTS — INSPECTION BY DEFENSE COUNSEL — COURT RULES.

A sentencing court should permit a defendant's attorney to inspect a presentence report prior to imposing sentence (GCR 1963, 785.12).

20. COURTS — CRIMINAL PROCEDURE — SENTENCING — OPPORTUNITY TO ADVISE COURT.

A court, prior to imposing sentence, should give a defendant and his attorney a reasonable opportunity to advise the court of any circumstances which they believe the court should consider in imposing sentence (GCR 1963, 785.8).

21. APPEAL — CRIMINAL LAW — PERSONAL REVIEW OF PRESENTENCE REPORTS — PRESERVATION OF ISSUE FOR APPEAL.

A defendant who is represented by counsel in a criminal case does not have an absolute right to personally review a presentence report and must request such a review on the record to preserve the issue for appeal.

22. CRIMINAL LAW — PERSONAL REVIEW OF PRESENTENCE REPORTS — RESENTENCING.

A defendant is not entitled to be resentenced because he was not permitted to personally review the presentence report prepared in his case where the record establishes that his attorney read the report, approved the factual information therein contained and added nothing, and where the defendant failed to request such review on the record when afforded the opportunity.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter E. Deegan,* Prosecuting Attorney, and *Peter R. George,* Chief Appellate Attorney, for the people.

*R. Steven Whalen,* Assistant State Appellate Defender, for defendant on appeal.

Before: J. H. GILLIS, P.J., and V. J. BRENNAN and A. C. MILLER,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

J. H. Gillis, P.J. On September 15, 1978, defendant was found guilty by a jury of two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(f); MSA 28.788(2)(1)(f). Count one was based on sexual intercourse; count two was based on cunnilingus. Defendant was sentenced to 15 to 25 years on each count, such sentences to run concurrently.

Defendant appeals as of right.

At approximately 1:30 a.m. on July 6, 1977, defendant's mother awoke to find her son, the defendant, kneeling on her bed, straddling her legs. After asking him what he wanted, and being told that he intended to sexually assault her, the complainant screamed and was immediately engaged in a struggle during which defendant covered her face and mouth with a pillow every time she screamed. Finally, defendant allowed the complainant to sit up in order to recover her breath, at which point she ran from the bedroom. Defendant caught her in the hallway, threw her to the floor, placed his mouth on her genitals, and later penetrated her vagina with his penis. Subsequently, defendant demanded that she give him her purse, from which he took $5. Defendant then left the house, after warning the complainant not to tell his sister or the police what had happened. Defendant's father was no longer living at the time.

After assuring herself that the defendant had left her home, the complainant locked herself in her bedroom, and called her minister. Reverend Kutz and his wife testified that they immediately drove to Mrs. Sommerville's home, where she ran from the front door to the vehicle as soon as it pulled up. Mrs. Sommerville told the Kutzes that her son had raped her and they took her to their home.

At the Kutz home, Mrs. Sommerville declined to call the police or to seek medical treatment because she was then unwilling to implicate her son as her assailant. Instead, she took a warm bath and then talked with the Kutzes until approximately 4 a.m. Reverend and Mrs. Kutz both testified that they observed scratches and abrasions on Mrs. Sommerville's face when they arrived at the Kutz home, and Mrs. Kutz testified that she noticed that Mrs. Sommerville was bleeding from her vagina as she prepared to take her bath.

On July 6, Mrs. Sommerville worked in the morning and spent the afternoon at the Kutz home. That evening, she decided that she would report the crime and was interviewed by two uniformed policemen. Thereafter, on July 7, she and Mrs. Kutz met a police detective at her home, where she described the attack and gave the police her nightgown and the underwear she had put on just after the assault. Prints were dusted for, but none were found. The clothing was submitted to the crime lab, together with blood and saliva samples from both defendant and his mother. Tests resulted in the findings that defendant is a type O secreter, Mrs. Sommerville is a type O nonsecreter, and type O secretions were found in the semen stains on the nightgown.[1] Thus, the forensic lab technician testified that defendant could have been a donor of the semen on the nightgown.

Defendant's case was founded on an alibi supported by the testimony of five friends with whom he was alleged to have spent the evening of July 5. The trial testimony was consistent among the

[1] In this regard, it must be recalled that defendant was not the natural child of either Mrs. Sommerville or her husband. There were thus no inherited characteristics to complicate the lab findings.

defense witnesses as to defendant's actions on the evening of July 5. However, this testimony was contradicted to some extent by prior inconsistent statements made by defendant when he was first contacted by the police.

At the close of the trial, the court instructed the jury as to first-degree criminal sexual conduct on the basis of cunnilingus and on the basis of sexual intercourse, as well as second, third, and fourth-degree criminal sexual conduct. These instructions will be more fully detailed hereafter. The verdict forms were read and explained, and the jury retired to deliberate. When they returned, the following dialogue occurred:

*"The Court:* The People of the State of Michigan versus Patrick Colen Sommerville. Will the Foreman please rise. Has the jury reached a verdict on Count One which is vaginal intercourse?

*"The Foreman:* Yes.

*"The Court:* And what is the verdict?

*"The Foreman:* We, the jury, find the defendant, Patrick Colen Sommerville, guilty as charged on the first degree of criminal sexual conduct, to-wit, vaginal intercourse, to-wit, with another person; and to Jane Sommerville, causing personal injury to said victim by using force and coercion to accomplish sexual penetration.

*"The Court:* Count Two, coitus?

*"The Foreman:* Yes we have.

*"The Court:* And what is the verdict?

*"The Foreman:* We, the jury, find the defendant, Patrick Colen Sommerville, guilty as charged of first-degree criminal sexual conduct, to-wit, coitus with another person, to-wit; and to Jane Sommerville, causing personal injury to said victim by using force and coercion to accomplish sexual penetration."

Further facts will be given as the need arises.

Defendant raises ten issues on appeal. He first challenges the jury instructions on first- and second-degree criminal sexual conduct. MCL 750.520b(1)(f) and 750.520c(1)(f); MSA 28.788(2)(1)(f) and 28.788(3)(1)(f), provide in pertinent part that:

"A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

\* \* \*

"(f) The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration."

"A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:

\* \* \*

"(f) The actor causes personal injury to the victim and force or coercion is used to accomplish the sexual contact."

The defendant argues that, because the trial court omitted the personal injury, force and coercion elements from the first-degree charge and the personal injury element from the second-degree charge, reversible error occurred.

Defense counsel failed to object to the instructions as given. Indeed, he noted on the record that he was satisfied therewith. Thus, absent a finding of manifest injustice, the issue has not been preserved for review. *People v Stinson,* 88 Mich App 672, 674; 278 NW2d 715 (1979). We find no manifest injustice in this case. As in *People v Payne,* 90 Mich App 713, 722; 282 NW2d 456 (1979), jury instructions must be read as a whole, and the existence of a verdict form correctly listing each

element of the charged and lesser included offenses may also be considered in resolving an issue such as this. After a review of the instructions we find that on the whole, they sufficiently informed the jury of the elements necessary to convict defendant on each count of first-degree criminal sexual conduct.

Defendant's second issue challenges the trial court's failure to instruct the jury that cunnilingus requires penetration of the victim's vagina with the assailant's mouth. The instruction which was given merely required proof of contact, rather than penetration.

MCL 750.520b(1); MSA 28.788(2)(1) defines first-degree criminal sexual conduct as sexual penetration with another person under certain enumerated circumstances. MCL 750.520a(h); MSA 28.788(1)(h) defines sexual penetration as follows:

" 'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required."

Defendant argues that the wording of the foregoing statute requires an *intrusion* as a means of distinguishing sexual penetration from sexual contact. We disagree.

Cunnilingus is nowhere defined to require an intrusion. Indeed, such an action would be physically most difficult. The same is true of fellatio, if forcibly performed by a male actor upon a male victim. See, *e.g., People v Hollis,* 96 Mich App 333; 292 NW2d 538 (1980). Thus, it is not the intrusion or penetration which elevates cunnilingus to first-degree criminal sexual conduct. Rather, it is quite reasonable to interpret the inclusion of both oral

sexual acts in the definition of sexual penetration as based on the belief that each is as offensive to the victim and to society as is forcible penetration. *Cf. People v Payne,* 90 Mich App 713, 722; 282 NW2d 456 (1979), where another panel of this Court seems to have concluded that penetration is required of first-degree criminal sexual acts involving oral sexual assaults. Thus, CJI 20:2:02, which defines oral sexual acts as involving contact between the mouth of one party and the sex organs of another, was properly given as an instruction in the instant case.

Defendant's third issue asserts that the admission into evidence of testimony as to Mrs. Sommerville's character and defendant's veracity was error. During cross-examination of Mrs. Sommerville, the following questions and answers were noted on the transcript:

"*Q.* I think you stated you have asthma, is that correct?

"*A.* I sometimes do, yes.

"*Q.* Do you take any regular medication for it?

"*A.* No, it isn't necessary.

"*Q.* Do you have any medication for it?

"*A.* I have, I carry it with me always. I very seldom have to use it.

"*Q.* What kind of condition usually brings on an attack, if you can tell me?

"*A.* It seems to be the weather, the very humid weather will do that.

"*Q.* Do you take any other medication?

"*A.* No. Are you talking about at that time?

"*Q.* At that time.

"*A.* No.

"*Q.* Do you take any medication now?

"*A.* Yes.

"*Q.* Are you on medication today?

"*A.* I don't know if you call this medication or not I

have an irritated colon and I'm taking medication for that off and on.

"*Q.* Are you taking anything for your nerves?

"*A.* I have valium in the house and I take it very, very infrequently.

"*Q.* When you come home from work do you ever occasionally have a drink?

"*A.* Occasionally.

"*Q.* Do you remember if you had one that night?

"*A.* No, I can't tell you if I did or not, I may have had but I don't remember—

"*Q.* What kind of drinks do you drink?

"*A.* Various ones.

"*Q.* Well, you don't remember if you had any drinks that night?

"*A.* No, I don't remember."

In response to the perceived intent of defense counsel, the prosecutor asked Mrs. Kutz to describe the complainant's "stability, her character or attitude * * *". Over defense counsel's objection, Mrs. Kutz testified as follows:

"*Q.* Now, indicated that you have known her previously. Would you describe her or did you have a good personal knowledge of her as a person and how she was in the community previous to this occasion?

"*A.* Yes.

"*Q.* Would you describe that to us as to her stability, her character or attitude if you—

"*Mr. Truesdell [Defense Counsel]:* Objection, your Honor. I don't think character has been tested yet.

"*Mr. Deegan [Prosecuting Attorney]:* I think it has been challenged pretty extensively. In fact, I believe, on cross examination, there was an implication possibly as to having a drinking problem. I'm not going to suggest that counsel has made any indication towards bad character but certainly as to stability.

"*The Court:* You may proceed.

"*Q. [By Mr. Deegan]* Describe Mrs. Sommerville as

you know her in the community, as you have known her personally up to this point and prior to this occurrence?

"A. Well, she has always been a very gracious person. I think she is a very intelligent woman. She's a calm kind of person, I don't know, except for that night I don't know of any other time that I have seen her in any kind of a frenzy. She thinks things through carefully and quietly. Since we have known her we have sometimes commented, at home, that she's one of the calmest and deliberative people we know because many people we know, including us, make decisions quickly and so forth and I have appreciated her friendship very much.

"Q. I believe you have indicated that you have known her since shortly before you came to town and that was four or five years previous—

"A. It will be five years.

"Q. Have you had a considerable amount of contact with her socially and through the church and things like that during this period of time?

"A. Yes, we have.

"Q. Have you, at anytime, seen her act or react in a way that would appear to be abnormal or not appropriate or proper for anyone in a given situation?

"A. No.

\* \* \*

"Q. Now, I want to cover this other point with you, Mrs. Kutz, during the period of time that you have known her previously and during the period of time that she lived with you, during this five months, did you ever discern anything at all that would lead you to believe that she had any kind of a drinking problem?

"A. No.

"Q. You have had an awful lot of personal contact with her during this period of time?

"A. Yes.

"Q. You described her character, her attitude previous to this occurrence, would you describe it as time went on during this five month period of time, since that date as you know it today and know it now?

"*A.* Well, for awhile, the first, maybe, few weeks she wasn't really herself. I'm sure this was on her mind a lot of the time. She was much quieter, there were times when she didn't want it to be quiet but gradually then she became more of herself again and I was very admiring of her for the way she pulled herself together. She's a lady with her head on straight."

In a similar vein, Reverend Kutz stated, also over objection, that:

"*Q.* Now, specifically, in relationship to Mrs. Sommerville, could you state, of your knowledge of her, both as an individual and your knowledge of her in the community, could you describe her as a person and as to her abilities to be able to see things clear, relate them accurately—

"*A.* Yes, Anna Jean is a person of high level intelligence, deep devotion to her Lord and his church. She is a person of good thought processes that are admired by other people. I mentioned this characteristic to indicate. why I believe that she has held a number of posts of leadership in the congregation, small posts, large posts, and now she is on the executive board of the congregation, which board one does not jump into until having served in some other capacity in a reliable way and a way that would be admired by others in the congregation. I have seen her operate in terms of wifehood and motherhood and have respected her judgment. I find her an admirable person.

"*Q.* Have you found anything at all, Reverend, in your contact with her or in your understanding of her position in the community, that would cause you to believe that she has an emotional or mental deficiencies that, say, could lessen her credibility?

"*A.* I would say emphatically, no.

"*Q.* Have you discerned or observed anything about her personality that would relate to any medical or physical problems such as medication or drug abuse or alcohol involvement or anything of that nature at all?

"*Mr. Truesdell:* I am going to object to that question. I would like to have the witness qualified to answer

that question. I don't believe he has present qualifications for that answer.

"*Mr. Deegan:* Your Honor, I believe that as his previous testimony, up to this time, I can carry it a little bit farther, what personal contacts he has had with her.

"*The Court:* You may proceed.

"*Q.* [By Mr. Deegan] You have indicated that she lived in your home, actually as a resident, for approximately five months, is that right?

"*A.* Yes.

"*Q.* You had known her for a long period of time before that?

"*A.* Yes.

"*Q.* Did you ever discern that she, at anytime, was abusive of any kind of medications or alcohol or anything of this nature?

"*A.* No, I have seen Anna Jean take a white pill, that I call a chalk pill, for digestive problems but that has been the extent of medication that I have observed. I take one myself of a different type. I haven't noticed anything else, the answer is, no.

"*Q.* Have you seen her socially in your home, have you ever come in contact with or have any use as it relates to alcohol?

"*A.* Come in contact, have any uses as relates to alcohol, yes.

"*Q.* Would you describe what you have observed in relationship to that?

"*A.* Yes, I have seen Anna Jean take a drink before a meal. I have seen her take a drink at nighttime before going to bed.

"*Q.* Have you ever seen anything that comes close to an abuse of this type of substance according to what you have observed?

"*A.* No."

MRE 610 provides that "evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature his credibility is impaired or enhanced". Defendant relies on this rule, and a

similarly worded statute, MCL 600.1436; MSA 27A.1436, in his claim that Reverend Kutz's statement as to Mrs. Sommerville's "deep devotion to her Lord and his church" constituted reversible error. We disagree.

On its face, Reverend Kutz's statement speaks to the complainant's religious beliefs. Several factors distinguish this statement from those considered to constitute reversible error in other cases. First, previous testimony had established that Mrs. Sommerville attended the church with which Reverend Kutz was associated. Thus, the fact that she attended church was not unknown to the jury before he testified. The fact that she called her minister immediately after the assault further established the strength of her affiliation with her church. That she resided with Reverend and Mrs. Kutz for approximately five months after the assault also implied something about this affiliation. Thus, we do not believe that Reverend Kutz's testimony constituted a compelling reason to attach more credence to her testimony than otherwise.

Second, most of the cases which condemn the admission into evidence of such testimony involve instances where the prosecutor deliberately questioned a witness as to his or her religious beliefs, or the beliefs of another witness or the defendant. In *People v Hall,* 391 Mich 175; 215 NW2d 166 (1974), the prosecutor questioned the defendant as to his own beliefs. Likewise, in *People v Bouchee,* 400 Mich 253; 253 NW2d 626 (1977). In *People v Wells,* 82 Mich App 543; 267 NW2d 448 (1978), *lv den* 405 Mich 828 (1979), the prosecutor asked the complainant whether she attended church and, if so, whether she then knew what it is to take an oath.

In this case, the statement as to Mrs. Sommer-

ville's religious devotion was not solicited in any way. The prosecutor asked Reverend Kutz to describe the complainant "as a person and as to her abilities to be able to see things clear *[sic]*, [and] relate them accurately". The only means by which he could have prevented the challenged statement would have been to caution the witness not to bring religion into his answer. As there is no duty on the prosecutor to make such cautionary remarks, we see little reason to reverse solely on the basis of the challenged testimony.

Defendant's second ground for objecting to the testimony as to complainant's character is that MRE 608(a) prohibits the admission into evidence of testimony as to a witness's credibility unless the witness's character for truthfulness has been attacked by reputation evidence or otherwise. Asserting that his attorney did not attack the complainant's character for truthfulness when he questioned her about her use of drugs and/or alcohol, defendant claims that the trial court's decision to allow the prosecutor to question Mrs. Kutz as to the complainant's stability, character and attitude was error. We disagree.

It is arguable whether defense counsel's questions as to Mrs. Sommerville's drug and/or alcohol use on the night of the attack or otherwise constituted an attack on her character for truthfulness. Such questions could have been directed solely at the complainant's *ability* to identify her assailant and clearly recall the assault. If they were, then it was error to admit the challenged testimony; absent an attack on the complainant's character for truthfulness, MRE 608(a) prohibits the admission of such testimony into evidence.

In our opinion, the admission into evidence of Reverend and Mrs. Kutz's testimony comes very

close to constituting error under MRE 608. However, we further believe that any error so committed is harmless under *People v Christensen,* 64 Mich App 23, 32-33; 235 NW2d 50 (1975), *lv den* 397 Mich 839 (1976).

Defendant's final claim under this issue is that the prosecutor impermissibly attacked the defendant's character for truthfulness when he cross-examined defendant's alibi witnesses as to defendant's drug use. As defense counsel failed to object to such line of questioning, review of the issue on appeal is precluded, absent a finding of manifest injustice. *People v Stinson,* 88 Mich App 672, 674; 278 NW2d 715 (1979). We do not believe a manifest injustice resulted from the prosecutor's cross-examination. The majority of the prosecutor's questions were directed at the ingestion of beer, marijuana and cocaine at the defendant's Ypsilanti home on July 5. The prosecutor also asked if each witness found the defendant to be reliable and dependable. Given that the witnesses had each testified to the use of such intoxicants on direct examination, and to the length of their friendships with defendant, the prosecutor's cross-examination was not improper. In this regard, it must also be noted that Mrs. Sommerville's testimony at trial was unshakable, that she clearly and unwaveringly identified her son as the man who had sexually assaulted her, and that the alibi offered by defendant did not completely contradict the complainant's testimony that the assault occurred at approximately 1:30 a.m. on July 6, in Port Huron. Thus, if error did occur, it was not such as to result in the finding that absent such error even one juror might have voted to acquit defendant.

Defendant's fourth issue is premised on testimony which contained hearsay elicited by the

prosecutor from Reverend and Mrs. Kutz and from a detective to whom Mrs. Sommerville spoke on July 7. Each of the three witnesses was asked to recount or verify Mrs. Sommerville's account of the assault and each did so, without objection by defense counsel. Defendant now contends that such testimony was hearsay, the admission of which resulted in reversible error.

As noted above, absent manifest injustice, matters unobjected to at the trial level are not preserved for review. *Stinson, supra.* Because the complainant's credibility was of critical importance in this case, we have reviewed the record to determine possible prejudice to the defendant. We conclude that reversible error did not result from the admission of the challenged testimony.

Mrs. Sommerville's statements to Reverend and Mrs. Kutz as to the event which occurred less than one-half hour before constitute an excited utterance. MRE 803(2) excepts from the operation of the hearsay rule, MRE 802, statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition". See also, *People v Schinzel,* 86 Mich App 337, 345; 272 NW2d 648 (1978), *rev'd on other grounds* 406 Mich 888 (1979). Clearly, the assault by a man perceived to be her son was an occurrence "startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting". *Schinzel, supra,* 345. The statements were made to Reverend and Mrs. Kutz before there had been time to contrive and misrepresent, and they related to the circumstances of the occurrence preceding them.

The issue of the admissibility of the detective's testimony is not so easily resolved. Mrs. Sommerville did not speak to the detective until more than

24 hours after the assault. In the interim, she had spent an afternoon contemplating whether she should report the attack. Thus, her statements cannot be classified as excited utterances nor as any other type of admissible hearsay.

The admission into evidence of the detective's testimony verifying that Mrs. Sommerville's trial testimony was consistent with her statement to him on July 7 was error. To determine whether the error was harmless beyond a reasonable doubt, "the courts of this state have looked to such factors as the quantum of other evidence indicating defendant's guilt, how tenuous the remaining evidence against the defendant is, and whether the hearsay testimony is merely cumulative with the other evidence against the defendant". *People v Jefferson,* 77 Mich App 153, 160; 258 NW2d 172 (1977).

The quantum of other evidence of defendant's guilt in the case at bar was substantial. First, in first-degree criminal sexual conduct prosecutions, the complainant's testimony need not be corroborated. MCL 750.520h; MSA 28.788(8). Second, Mrs. Sommerville consistently testified as to the facts of the assault, and such testimony was corroborated by Reverend and Mrs. Kutz. Third, the condition of Mrs. Sommerville's home after the assault supported various aspects of her testimony. Finally, the detective's testimony was merely cumulative. Indeed, he did not even repeat the details of the assault. Rather, he stated only that the account he heard shortly after the crime was consistent with Mrs. Sommerville's trial testimony. We thus conclude that no error occurred with regard to the challenged hearsay testimony.

Defendant's fifth issue challenges the sufficiency of the evidence on the element of penetration as to

first-degree criminal sexual conduct—cunnilingus. The complainant testified that she was not certain whether defendant penetrated her vagina with his mouth. Defendant argues that, if the complainant herself was not certain whether penetration occurred, the jury could not find sufficient evidence of that element. As noted above, however, penetration is not a required element of first-degree criminal sexual conduct—cunnilingus.

"Due process requires that the prosecutor introduce sufficient evidence which could justify a trier of fact in reasonably concluding that defendant is guilty beyond a reasonable doubt before a defendant can be convicted of a criminal offense." *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979).

At trial, Mrs. Sommerville clearly testified that defendant placed his mouth on her vagina, after forcibly throwing her to the floor and pushing her nightgown up to her waist. This testimony suffices to establish first-degree criminal sexual conduct—cunnilingus.

Defendant next asserts that his conviction of first-degree criminal sexual conduct—cunnilingus must be reversed because the judge and the jury used the word "coitus" when the verdict was rendered, rather than the word "cunnilingus".

In *People v Rand,* 397 Mich 638, 643; 247 NW2d 508 (1976), the Supreme Court addressed the question of imprecise verdicts rendered by juries:

"Jurors are not trained in the law, and therefore will often fail to state their verdict with technical legal precision. *People v Guidry,* 67 Mich App 653, 661; 242 NW2d 461 (1976) (V. J. BRENNAN, J., dissenting). The very purpose of language is to express ideas. The written form of the verdict should not be exalted over the substantive intent of the jury. We hold, therefore, that

a jury verdict is not void for uncertainty if the jury's intent can be clearly deduced by reference to the pleadings, the court's charge, and the entire record. This standard of 'clear deducibility' adequately protects the defendant's right to trial by jury while it avoids artificiality in the construction of the jury verdict."

In this case, review of the trial court's charge on count two reveals a consistent use of the term cunnilingus. Additionally, the word "coitus" appears only in connection with the rendition of the jury's verdict. Finally, the information read at the opening of the trial and during the jury instructions, together with the verdict forms given to the jurors, both specifically reference count two to "cunnilingus". From this evidence, it can be clearly deduced that the jury's verdict on count two was based on an act of cunnilingus committed by the defendant on the complainant.

Defendant also raises an issue premised on *People v Sturdivant,* 91 Mich App 128, 131; 283 NW2d 669 (1979), *lv den* 407 Mich 933 (1979), where this Court ruled that it is error to admit blood type evidence which serves "to include the defendant in the class of possible assailants * * * thereby increas[ing] the probability of defendant's guilt without connecting him, in any way, to the charged offense". Such blood type findings were admitted into evidence in the instant case, and the defendant claims reversible error thereby occurred. We disagree, for, as was stated in *Sturdivant:*

"This holding, however, does not require reversal in the instant case. Here, the complainant had several opportunities to observe the defendant at the time of the attack and positively identified him on several occasions. The complainant's eyewitness testimony, if believed by the trier of fact, is sufficient evidence to

convict. *People v Knapp,* 34 Mich App 325, 332; 191 NW2d 155 (1971). We hold that any error interjected into defendant's trial by the admission of the blood type evidence was harmless beyond a reasonable doubt under the standards set forth in *People v Christensen,* 64 Mich App 23, 32; 235 NW2d 50 (1975)." 91 Mich App 134.

Mrs. Sommerville identified her son as her assailant in her attempts to talk with him during the assault, to Reverend and Mrs. Kutz immediately following the assault, to the police who interviewed her the next evening, and at trial. Her testimony on the defendant's identity never waivered. Thus, as in *Sturdivant,* any error caused by the admission of the blood type evidence was harmless beyond a reasonable doubt.

Defendant's eighth issue, ineffective assistance of counsel, rests on the premise that the preceding issues reflect his defense attorney's failure to perform as well as a lawyer with ordinary skill and training in criminal law. *People v Garcia,* 398 Mich 250, 254; 247 NW2d 547 (1976). We disagree, and hold that defendant would not have had a reasonably likely chance of acquittal, *People v Krist,* 93 Mich App 425, 437; 287 NW2d 251 (1979), *lv den* 407 Mich 963 (1980), even if none of the alleged errors had occurred. Our holdings in each of the foregoing issues also leads to the conclusion that defendant was not denied a fair trial, as he asserted in his ninth issue on appeal.

Defendant's final issue on appeal alleges that he is entitled to be resentenced because he was not permitted to personally review the presentence report prepared in his case. The record establishes, however, that his attorney read the report, found all of the factual information contained therein to be correct, and had nothing to add to it. When

asked if he had anything to say, defendant answered in the negative.

GCR 1963, 785.12, provides that the sentencing court shall permit the defendant's attorney to inspect the presentence report, and such was done here. GCR 1963, 785.8(2) requires the court to "give defendant and his attorney a reasonable opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence". Again, such was done in this case. Although we do not hold that a defendant who is represented by counsel has an absolute right to personally review the presentence report, any defendant wishing to raise the issue must certainly make his request for such review on the record. See, *People v Oster,* 97 Mich App 122; 294 NW2d 253 (1980), *People v Worden,* 91 Mich App 666, 685; 284 NW2d 159 (1979), and *People v Moore,* 60 Mich App 1, 4; 230 NW2d 281 (1975). As it does not appear that defendant made such a request, his argument in this regard must be rejected.

Affirmed.