PEOPLE v CAMON

Docket No. 45196. Submitted October 22, 1980, at Detroit.—Decided
　　October 20, 1981. Leave to appeal applied for.
　　Andrew Camon was convicted of two counts of first-degree crimi-
　　nal sexual conduct in Recorder's Court of Detroit, Warfield
　　Moore, Jr., J. Defendant appealed. *Held:*
　　　　1. The trial court admitted evidence regarding the analysis of
　　seminal fluids found on the complainant's clothing and evidence
　　of the defendant's blood type. Evidence from a secretor test,
　　which detects blood type from other body fluids, indicated that
　　fluids present on the complainant's panties came from persons
　　who were secretors with type A and type O blood. Blood and
　　saliva samples revealed the complainant to be an A+ secretor
　　and the defendant to be an O+ secretor. Approximately 80
　　percent of the population secretes; type O is the most common
　　blood group, comprising about 45 percent of the population.

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 251, 252.
[2, 10] 29 Am Jur 2d, Evidence §§ 370, 1104, 1147.
　　65 Am Jur 2d, Rape § 61.
　　Admissibility, weight, and sufficiency of blood-grouping tests in
　　　　criminal cases. 2 ALR4th 500.
　　Blood grouping tests. 46 ALR2d 1000.
[3] 65 Am Jur 2d, Rape § 102.
　　81 Am Jur 2d, Witnesses § 165.
　　Crimes against spouse within exception permitting testimony by
　　　　one spouse against other in criminal prosecution. 11 AlR2d 646.
[4, 7] 5 Am Jur 2d, Appeal and Error §§ 545, 625.
[5] 30 Am Jur 2d, Evidence §§ 288, 1080.
[6] 29 Am Jur 2d, Evidence § 269.
[7] 5 Am Jur 2d, Appeal and Error § 891.
[8] 65 Am Jur 2d, Rape §§ 3, 4.
　　70 Am Jur 2d, Sodomy §§ 3, 5, 6.
　　Validity and construction of statute defining crime of rape to
　　　　include activity traditionally punishable as sodomy. 3 ALR4th
　　　　1009.
　　What constitutes penetration in prosecution for rape or statutory
　　　　rape. 76 ALR3d 163.
[9] 21 Am Jur 2d, Criminal Law § 447.

Thus, 36 percent of the population at large are type O se-cretors. Defendant alleged that the introduction of the evidence was improper. Defendant's objection goes to its weight, which is properly for the jury. If its admission was error, it was harmless beyond a reasonable doubt, since the complainant's testimony regarding identification was sufficient to convict defendant.

2. Defendant alleged that allowing testimony of his former wife, to whom he was married at the time of the crime, was error. Her testimony concerned defendant's physical appearance around the time of the crime and observations made during the marriage as to his ability to work with his hands. Her testimony concerned observations which could have been made by any third person outside the marital home and relationship and were not entitled to marital privilege protection.

3. The inability of a victim of criminal sexual conduct to positively identify a knife as being the knife used in the sexual assault made upon her does not preclude the admission of the knife into evidence. Such uncertainty goes to the weight rather than the admissibility of such evidence. If the knife, which was not positively identified, was admitted into evidence, and it is not clear from the record that it was, its admission was proper.

4. An officer's testimony, elicited to refute defendant's testimony regarding his use and method of carrying the knife, was relevant and material since it went directly to the issue of whether the defendant could have readily utilized the knife in the manner testified to by the complaining witness. No reversible error occurred in its admission.

5. The criminal jury instructions regarding fellatio do not obliterate the distinction between first- and second-degree criminal sexual conduct by eliminating the element of penetration.

6. The trial court acted properly in sentencing defendant.

Affirmed.

M. J. KELLY, J., dissented in part. He would hold that the blood-type evidence was more prejudicial than probative but agreed that in this case its admission was harmless error. He concurred in affirmance.

OPINION OF THE COURT

1. EVIDENCE — RELEVANCY — RULES OF EVIDENCE.

The test of relevancy is whether evidence has any tendency to make the existence of a fact more probable or less probable than it would be without the evidence (MRE 401).

2. EVIDENCE — RAPE — BLOOD TYPES — IDENTIFICATION — HARMLESS ERROR.

The admission in a criminal sexual conduct trial of blood-type evidence that serves only to include defendant in a class of possible perpetrators of the crime, if error, is harmless error where there is a positive identification of the defendant by the complainant coupled with evidence of the complainant's opportunity to observe the defendant.

3. EVIDENCE — MARITAL PRIVILEGE — CRIMINAL LAW.

A defendant's former spouse may testify to the defendant's physical condition as observed at various times during the marriage where those observations are such that they could have been made by any third person outside the marital home and relationship.

4. CRIMINAL LAW — ARGUMENT OF COUNSEL — PRESERVING QUESTION.

Appellate review of a prosecutor's argument is precluded in the absence of objection during trial unless failure to consider the issue would result in a miscarriage of justice.

5. CRIMINAL LAW — EVIDENCE — WEAPONS — IDENTIFICATION WITH CRIME.

The inability of a victim of criminal sexual conduct to positively identify a knife as being the knife used in the sexual assault made upon her does not preclude the admission of the knife into evidence; such uncertainty goes to the weight rather than the admissibility of such evidence.

6. EVIDENCE — REBUTTAL.

Rebuttal is limited to the refutation of relevant and material evidence, hence, evidence bearing on an issue properly raised in a case.

7. APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTION.

Objection to an allegedly erroneous jury instruction before the jury retires is a prerequisite to raising the issue on appeal; where no objection is raised to alleged errors in jury instructions a verdict will not be set aside unless the omissions or error pertain to a basic and controlling issue in the case and have resulted in a miscarriage of justice.

8. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT, FIRST-DEGREE — STATUTES.

Cunnilingus and fellatio are included in the definition of sexual penetrations and under certain enumerated circumstances constitute first-degree criminal sexual conduct due not to intrusion

or penetration of the genital or anal openings of one person by another, but because each act is as offensive to a victim and to society as is forcible penetration (MCL 750.520a[h]; MSA 28.788[1][h]).

9. CRIMINAL LAW — SENTENCING — REFUSAL TO PLEAD GUILTY.

A sentencing judge may not take into consideration a defendant's refusal to plead guilty in determining the term of the sentence.

DISSENT IN PART BY M. J. KELLY, J.

10. CRIMINAL LAW — EVIDENCE — BLOOD TYPE.

*The probative value of seminal fluid-blood type analysis evidence placing the defendant within a group comprising 36 percent of the population cannot outweigh its prejudicial effect and should not be admitted; however, its admission is harmless where there is positive identification of the defendant by the complainant coupled with evidence of the complainant's opportunity to observe the defendant.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Lynn Chard,* Assistant State Appellate Defender, for defendant on appeal.

Before: DANHOF, C.J., and M. J. KELLY and D. L. SULLIVAN,* JJ.

D. L. SULLIVAN, J. On February 2, 1979, defendant was found guilty by a Detroit Recorder's Court jury of two counts of criminal sexual conduct in the first degree, MCL 750.520(b); MSA 28.788(2). He was sentenced to serve concurrent terms of from 20 to 30 years in prison and appeals as of right.

On the evening of June 16, 1977, the complainant was accosted by defendant as she walked down

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

Lahser Road in Detroit. He grabbed her arm and told her to be careful because he had a knife. Holding the knife in his left hand and with his left arm around the complainant, defendant took complainant down Lahser Road to Hope Park, where she was forced to engage in intercourse and two acts of fellatio.

Although the complainant kept her eyes closed during intercourse, she testified that she had several opportunities to clearly view defendant's face. The first came when the two crossed a sidestreet on the way to Hope Park. The second occurred when the complainant stopped beneath a streetlight to tie her shoe. Finally, after the sex acts, the complainant lit a marijuana cigarette that defendant had rolled and again observed his features. She also took particular note of defendant's brown square-toed shoes.

Following the assault, the defendant asked to see the complainant again and she told him to meet her in the park the following evening. As the complainant walked home, the defendant disappeared. The complainant summoned the police and directed them to the area of the assault. After a futile attempt to locate possible witnesses, the police took the complainant to police headquarters where she gave her underwear to an officer. The following night, the complainant and the police waited without success in Hope Park for the defendant to appear.

On July 24, 1977, while being driven to work, the complainant saw the defendant hitchhiking on Telegraph Road. She recognized his boots and face and called the police, who arrived and arrested the defendant.

The defendant raises a variety of issues on appeal. He initially argues that reversible error

was committed when the trial court admitted evidence regarding the analysis of seminal fluids found on the complainant's clothing and evidence of the defendant's blood type. Evidence from a secretor test, which detects blood type from other body fluids, indicated that fluids present on the complainant's panties came from persons who were secretors with type A and type O blood. Blood and saliva samples revealed the complainant to be an A+ secretor and the defendant to be an O+ secretor. Approximately 80 percent of the population secretes; type O is the most common blood group, comprising about 45 percent of the population. Thus, 36 percent of the population at large are type O secretors.

The defendant argues that the introduction of the evidence was improper, citing *People v Sturdivant,* 91 Mich App 128; 283 NW2d 669 (1979). In *Sturdivant,* evidence was introduced which showed that both the defendant and the person whose sperm was found on the complaining witness's panties were nonsecretors. This Court concluded that blood-type evidence has no probative value when used solely to include a defendant in a class of possible defendants. The Court took note of the fact that the evidence only limited the inclusive group of nonsecretors to 20 percent of the population. The decision found support in the provisions of the Paternity Act, MCL 722.716; MSA 25.496, banning the use of blood-test evidence in paternity proceedings except to protect the putative father. However, in *Sturdivant* the error was deemed harmless, since the complaining witness had otherwise positively identified the defendant. *Id.,* 133-134. See also *People v Sommerville,* 100 Mich App 470; 299 NW2d 387 (1980).

The *Sturdivant* analysis has subsequently been

rejected by a second panel of this Court in *People v Horton,* 99 Mich App 40; 297 NW2d 857 (1980). That decision, while acknowledging that the probative value of such evidence decreases as the population group connected with the crime grows larger, concluded that the weight of such evidence was properly a matter for the jury's determination. The panel considered the Paternity Act inapplicable to criminal proceedings. See also *People v Spencer,* 93 Mich App 605, 608; 286 NW2d 879 (1979).

We are persuaded that the *Horton* decision signals the correct approach. The test of relevancy is whether evidence has "any tendency to make the existence of any [material] fact * * * more probable or less probable * * *". MRE 401. The blood-type evidence admitted at trial provided one additional circumstance contributing to the identification of the defendant. The objection of remoteness goes to weight and is more appropriately a matter for argument before the jury.

In any event, the complainant's testimony regarding identification provided sufficient evidence to convict defendant. She indicated that she had several opportunities to observe the defendant's face and stated unequivocally that he was, indeed, the person who assaulted her. Thus, even if admission of the blood-type evidence was considered an error, it would be harmless beyond a reasonable doubt. *People v Sturdivant, supra,* 134.

The defendant next argues that reversible error was committed when his ex-wife, Millie Gatin, was permitted to testify for the prosecution. The defendant had previously testified that on June 16, 1977, he had stitches and a bandage over his left eye. He had also stated that he had limited use of his left forearm and hand due to an injury re-

ceived in 1975 while he was in the armed forces.
Mrs. Gatin revealed that, although she and the
defendant were separated during June and July of
1977, she had occasion to see him and observed no
eye injury. She testified that they were married
when the defendant left the armed forces and that
she had observed the defendant use both hands to
perform a variety of tasks. The couple were di-
vorced on December 1, 1978.

The defendant contends that Mrs. Gatin's testi-
mony regarding her observations revealed privi-
leged communications. The marital privilege is
contained in MCL 600.2162; MSA 27A.2162, which
provides, in part:

> "A husband shall not be examined as a witness for or
> against his wife without her consent; nor a wife for or
> against her husband without his consent * * * nor shall
> either, during the marriage or afterwards, without the
> consent of both, be examined as to any communication
> made by one to the other during the marriage * * *."

Since the statute only protects confidential "com-
munications", the critical question here is whether
Mrs. Gatin's observations were such communica-
tions.

In *People v Gessinger,* 238 Mich 625; 214 NW
184 (1927), the Court held that it was error to
admit testimony of the defendant's ex-wife as to
her observations of stolen property while she was
married to the defendant. The concurring opinion
explained:

> "The communications to which neither husband nor
> wife can testify for or against the other during the
> marriage or after it has ceased should not be confined
> to mere statements by one to the other, but should
> embrace all knowledge upon the part of either obtained
> by reason of the marriage relation, and which, but for

the confidence growing out of it, would not have been known." *Id.,* 631 (SHARPE, C.J., concurring).

Mrs. Gatin's observations were not made by reason of her marriage to the defendant but rather were observations that could have been made by any third person outside of the marital home and relationship. In fact, the observation of the defendant's eye took place when the defendant and Mrs. Gatin were separated and any confidential intercourse or communication had ended. *Cf. People v Zabijak,* 285 Mich 164, 177-179; 280 NW 149 (1938). Thus, the observations are not comparable with an observation of stolen property within the marital home, where a defendant might have an expectation that the confidence of the marriage would protect the secrecy of his acts. They were not confidential communications.

For this reason, defendant's reliance on *Pierson v Illinois Central R Co,* 159 Mich 110; 123 NW 576 (1909), is misplaced. In *Pierson,* the Court held that it was error to admit the plaintiff's ex-wife's testimony that when they were married he "was troubled with his back and constipation, that he often used plasters on his back, and that he was constantly taking mineral water for his constipation". *Id.,* 112. These were plainly observations that occurred because of the marriage relation and the confidence growing out of it, and are therefore distinguishable from the observations in the present case.

The defendant also claims that reversible error took place when the prosecutor elicited police testimony regarding a prior arrest. The defendant was arrested on July 23, 1977, the day before he was seen hitchhiking by the complainant. On direct examination, the arresting officer testified as follows:

"*Q.* And did you have an occasion to place Mr. Camon under arrest on that particular day?

"*A.* Yes, I did.

"*Q.* And in placing him under arrest did you have an occasion to search Mr. Camon?

"*A.* Yes, he was patted down for offensive weapons.

"*Q.* And what's the reason for that?"

Defense counsel objected to the line of questioning and, although he requested a curative instruction with regard to the arrest testimony, the focus of his objection was to possible mention that the defendant possessed a knife.[1] After extended argument, the court ruled inadmissible testimony relating to the knife. Counsel requested a curative instruction regarding the knife but expressed satisfaction when the court explained that the knife had not been mentioned.[2] Counsel did not again request an instruction regarding the arrest and

---

[1] "*Mr. Tropp:* If the court please, I'm going to object at this time to this line of interrogation. I fail to see the relevance of it, what bearing it has on this particular case, on June the 23rd and supposedly the defendant was arrested on June the 26th. It would have no bearing on this case at all.

"*The Court:* I think I'm going to give you counsel, and you too Mr. Weisberg, an opportunity to argue this. Maybe we'll excuse the jury so we can have this argument.

\* \* \*

"*The Court:* What is your objection?

"*Mr. Tropp:* It would be the position of the defense that this testimony would be highly prejudicial to this defendant. And it has no bearing on this case. No way they can say that the knife that they took on July the 23rd would have any connection with this particular case, and to give this impression to the jury, I think, it does irreparable damage to this defendant.

"Not only do I object to this witness testifying further, I would request an instruction to the jury to disregard the initial remarks this officer made relative to arresting the defendant on July the 23rd."

[2] "*Mr. Tropp:* Did he say anything about a knife though? I know I jumped up as soon as I could, but I thought he said something about —I thought the prosecutor led him with a question about a knife.

"*The Court:* He did not.

"*Mr. Tropp:* If I stopped him before he did, then good."

seemed to agree with the court's opinion that such an instruction would only reexpose the jury to the fact of the arrest. Counsel effectively withdrew his objection, and appellate review is precluded absent a manifest injustice. *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976). Because evidence of the arrest and confiscation of the knife was subsequently properly admitted on rebuttal, the earlier reference to the arrest was harmless.

Defendant also contends that he was denied a fair trial by the prosecution's repeated references to the knife seized on July 23, 1977. In his opening statement the prosecutor mentioned both the prior arrest and the fact that a knife was taken.[3] The complaining witness was permitted to examine the knife, even though it could not be positively identified. Finally, the officer who arrested defendant on July 23, 1977, testified on rebuttal regarding the arrest and the seized knife. It was never established that the seized knife was used to perpetrate the assault.

Because the prosecutor's comments were not objected to at trial, they may not be considered on review unless failure to do so would result in a miscarriage of justice. *People v Duncan,* 402 Mich 1, 15-16; 260 NW2d 58 (1977). The jury was instructed that the statements of the attorneys were not to be considered as evidence, so no showing of prejudice has been made.

The complainant identified the knife as having a blade similar in size to the one used but could not positively identify the weapon, never having observed its handle. Although the record is unclear

---

[3] "You will also hear from police officers who one day—one day before Mr. Camon was pointed out by Vicky Peters and arrested, you'll hear from police officers who had another encounter with Mr. Camon the day before and found on his person a knife, a pocket knife."

as to whether the knife was actually admitted into evidence, we conclude that admission would not have been in error. Identification is not required to be positive, absolute, certain, or wholly unqualified to justify admission; where there is some evidence for that purpose, objections to its sufficiency go to weight rather than admissibility. *People v Rojem,* 99 Mich App 452; 297 NW2d 698 (1980), *People v Stanley Mitchell,* 37 Mich App 351, 356-357; 194 NW2d 514 (1971).

The defendant's argument that the rebuttal testimony of the arresting officer was irrelevant and prejudicial is without merit. The officer testified that he arrested the defendant on July 23, 1977, and that a pat down search uncovered a pocket knife in the defendant's left front pants pocket. The defendant had previously testified that it was hard for him to grasp the knife in his left hand so he kept it in his right front or right back pocket. The complainant had stated that her assailant held the knife in his left hand.

"Rebuttal is limited to the refutation of relevant and material evidence—hence evidence bearing on an issue properly raised in a case.

"Such issue of course could be one raised in the prosecutor's case in chief or one raised by way of defense, and evidence on either would be subject to rebuttal." *People v Bennett,* 393 Mich 445, 449; 224 NW2d 840 (1975).

The officer's testimony was elicited to refute defendant's testimony regarding his use and method of carrying the knife. That evidence was relevant and material, since it went directly to the issue of whether the defendant could have readily utilized the knife in the manner testified to by the complaining witness. No reversible error occurred.

The defendant next contends that the trial court erred in failing to instruct on the element of penetration in defining criminal sexual conduct in the first degree involving fellatio. The defendant did not object to the instruction and so reversal is not warranted unless a miscarriage of justice resulted. A miscarriage of justice occurs only if the incorrect instruction pertains to a basic and controlling issue in the case. *People v Sherman Hall,* 77 Mich App 456, 462; 258 NW2d 517 (1977).

The instruction read[4] was that found in the standard Michigan Criminal Jury Instructions regarding fellatio. CJI 20:2:02; 20:2:04. The defendant contends that this instruction obliterates the distinction between first- and second-degree criminal sexual conduct by eliminating the element of penetration. We disagree.

The "sexual penetration" necessary for first-degree criminal sexual conduct is defined in MCL 750.520a(h); MSA 28.788(1)(h).

---

[4] "I am now going to talk to you and instruct you on the second count in the information which I read to you and which speaks to fellatio.

"The defendant is charged with the crime of criminal sexual conduct in the first degree, in the second count. The defendant pleads not guilty to this charge. To establish this charge the prosecution must prove each of the following elements beyond a reasonable doubt:

"First, that the defendant engaged in an oral, oral sexual act. Again, I will read to you the definition of a sexual act: If you find that any act occurred, it must have been a sexual act. It must have had as its purpose the arousing, stimulating or gratifying of the sexual emotions or it must have been done with some other sexually improper intent or purpose with the complainant, that is, the act involved contact between the mouth of one party and the sex organ of the other. It is alleged in this case that the sexual act was committed by contact of the mouth of the complainant with the penis of the defendant.

"It is further alleged in the complaint that the defendant charged was, at the time, armed with a weapon or an article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon. Again, a weapon is anything which the person assaulted reasonably believes could cause physical injury or death in a manner in which it is used."

" 'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required."

Fellatio is defined generally as "oral stimulation of the penis"[5] or "a sexual activity involving oral contact with the male genitals".[6] It is not defined to require an actual intrusion, but is included in the definition of sexual penetration based on the belief that it is as offensive to the victim and society as is forcible penetration. Thus, for purposes of criminal sexual conduct in the first degree, the instruction correctly defined oral sex acts as involving contact between the mouth of one party and the sex organ of the other. *People v Sommerville, supra.*

The defendant's final argument on appeal is that he was penalized for exercising his right to trial by jury. He claims that comments of the trial judge evidence that defendant's refusal to plead guilty was considered in sentencing.[7]

A defendant's refusal to plead guilty may not be

---

[5] Webster's Seventh New Collegiate Dictionary, p 307.

[6] Webster's New World Dictionary (2d college ed), p 513.

[7] *"Mr. Tropp:* One thing I would like to say to the court. Of course, it is brought out in the pre-sentence report, this is the defendant's first felony conviction and I think even as to any other criminal convictions, I think there is only one prior and that's a simple misdemeanor. I think.

*"The Court:* Yes, I do know. But let me say this also. Mr. Camon, now that you're found guilty by a jury the court has no way of looking at this matter except as a matter of you being guilty. You're guilty of criminal sexual conduct, first degree, both of which carries a maximum of any number of years to life imprisonment.

"It was communicated to you prior to this time, that we tried pre-trial wise to dispose of this matter because of the long delay and because, and I'm sure this was indicated to you, because it was communicated to all of us, the reluctance on the part of the complaining witness to come and to relive the happenings of this, uh, the events, and you chose to go to trial, as you should, if you felt that you

considered in determining his sentence. *People v Travis,* 85 Mich App 297, 303; 271 NW2d 208 (1978), *People v Snow,* 386 Mich 586, 593; 194 NW2d 314 (1972).

A fair reading of the sentence and transcript does not reveal any impropriety. Although the court commented on the defendant's decision to assert his jury right, it was only in the context of telling the defendant that the jury verdict was final and that his protestation of innocence was now futile. The court, in fact, emphasized that the defendant properly chose to exercise his jury right. His comments only reflect that the circumstances of the offense itself were considered. The sentence was within the statutory limits and is not open to appellate review or diminution. *People v Webb,* 75 Mich App 494, 502; 255 NW2d 661 (1977).

Affirmed.

DANHOF, C.J., concurred.

M. J. KELLY, J. *(concurring in part and dissenting in part).* The majority has joined the growing number of Court of Appeals panels in disagreement with the opinion I authored in *People v Sturdivant,* 91 Mich App 128; 283 NW2d 669 (1979). Without finding it necessary to reiterate

were not guilty and you still protest your innocence and you have that right, however, a jury of your peers found you guilty and, therefore, that protest falls right on deaf ears, you know, it's a terror ridden world.

"I just imagine the terror that that young woman felt when you walked up to her on the street, in the City of Detroit, put knife to her and took her into that park and took sexual advantage of her. And not only that but you caused her to do fellatio, which must have been a terrible indignity.

"It is, therefore, my sentence that you be committed to the Michigan Correction Commission for a period of not less than twenty, nor more than thirty years, and my sentence on both counts are the same and that it is my recommendation, sir, that you serve, at least, fifteen years of that term before any consideration relative to your parole."

my position I will respectfully note my dissent from the majority's rejection of *Sturdivant.* See *People v White,* 102 Mich App 156; 301 NW2d 837 (1980), in which I qualified somewhat the *Sturdivant* rationale.

In this case the seminal fluid analysis places the defendant within a group comprising 36 percent of the population. I would hold that its probative value could not outweigh the prejudicial effect and that therefore the trial court erred in admitting this blood-type evidence.

However, as in *Sturdivant,* reversal is not required. In this case the victim testified to her several opportunities to observe the defendant at the time of the attack and positively identified him at trial. I therefore conclude that the error injected by the admission of the blood-type evidence was harmless beyond a reasonable doubt under the standards set forth in *People v Christensen,* 64 Mich App 23, 32; 235 NW2d 50 (1975).

I concur in affirmance.