PEOPLE v TREVINO

Docket No. 79909. Submitted October 15, 1985, at Lansing. Decided October 6, 1986.

Defendant, José Trevino, was convicted following a bench trial in the Saginaw Circuit Court of first-degree criminal sexual conduct, extortion, and possession of a firearm during the commission or attempted commission of a felony. The trial court, Gary R. McDonald, J., sentenced defendant to imprisonment for life for the criminal sexual conduct conviction, to from twenty to thirty years for the extortion conviction, and to two years for the felony-firearm conviction. Defendant appeals.

The Court of Appeals *held:*

1. The trial court did not err in admitting expert testimony concerning blood typing tests conducted in this case. The admission of blood typing evidence is not error when there is other competent evidence linking the defendant to the crime, when the jurors have been properly cautioned about the use of such evidence in their deliberations, and when a proper foundation has been laid for the admission of such evidence.

2. The blood typing evidence was relevant under MRE 401 since it placed the defendant within a smaller group of the population which could have committed the rape. The danger of unfair prejudice does not outweigh the probative value of the evidence.

3. The trial court correctly determined that defendant's threat to hurt the complainant if she reported the rape to the police constituted extortion.

Affirmed.

REFERENCES

Am Jur 2d, Evidence §§ 106, 249, 251 *et seq.,* 370, 818, 1104.

Am Jur 2d, Extortion § 14.

Admissibility, weight, and sufficiency of blood-grouping tests in criminal cases. 2 ALR4th 500.

Blood grouping tests on issue of identity in rape prosecutions. 46 ALR2d 1039.

See also the annotations in the Index to Annotations under Extortion.

1. CRIMINAL LAW — EVIDENCE — BLOOD TYPES.
   The admission of blood typing evidence is not error when there is
   other competent evidence linking the defendant to the crime,
   when the jurors have been properly cautioned about the use of
   such evidence in their deliberations, and when a proper founda-
   tion has been laid for the admission of such evidence.

2. EVIDENCE — RELEVANCY — RULES OF EVIDENCE.
   The test of relevancy is whether evidence has any tendency to
   make the existence of a fact more probable or less probable
   than it would be without the evidence (MRE 401).

3. EVIDENCE — BLOOD TYPES.
   The weight to be given to blood typing evidence is for the jury's
   determination.

4. EVIDENCE — PREJUDICE — RULES OF EVIDENCE.
   The evidence rule regarding the exclusion of relevant evidence on
   grounds of prejudice does not exclude evidence because it
   simply prejudices the cause of the objecting party; the rule
   excludes only unfairly prejudicial evidence (MRE 402).

5. EXTORTION — THREATS OF FUTURE HARM.
   A person may be convicted of extortion as a result of threats of
   future harm if the victim does not comply with the extortion-
   ist's wishes (MCL 750.213; MSA 28.410).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Christopher S. Boyd,* Prosecuting Attorney, and *Kay F. Pearson,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *P. E. Bennett*), for defendant on appeal.

Before: V. J. BRENNAN, P.J., and BEASLEY and J. P. NOECKER,* JJ.

V. J. BRENNAN, P.J. Defendant appeals as of right from a March 29, 1984, judgment following a bench trial. The trial court found defendant guilty of one count of criminal sexual conduct in the first degree (CSC I), MCL 750.520b; MSA 28.788(2), one

* Circuit judge, sitting on the Court of Appeals by assignment.

count of extortion, MCL 750.213; MSA 28.410, and one count of possession of a firearm during the commission or attempted commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant was given a life sentence for the CSC I conviction, a sentence of from twenty to thirty years for the extortion conviction, and the mandatory two years for the felony-firearm conviction.

The complainant testified that she was driving to her sister's house on September 23, 1983, to drop off her two-year-old daughter before going to work when she stopped at a traffic light at the intersection of Hill and Genesee in Saginaw at approximately 5:30 A.M. While she was stopped at the light, the defendant opened the car door and, pointed a gun in her face and told her to move over. After driving for a few minutes, the defendant blindfolded her and brought her to a white brick building. They walked through a doorway of beads and the defendant sat her on the bed and told her to undress. The complainant, who was wearing a two-piece suit, removed her nylons and underpants and defendant raped her.

The defendant then put a sweatshirt over the complainant's and her daughter's heads and they left the apartment. The defendant asked her her name and where she lived, and she gave him her name and an incorrect address. She was told by the defendant that if she reported the incident to anybody, he would come after her and her daughter and hurt them. After getting into the car, defendant took ten dollars and the complainant's driver's license from her purse. The defendant explained that if she did not tell anybody about the attack he would mail the license back to her in a couple of days, but otherwise he would hurt her or her daughter. After defendant left the car, she drove back to her apartment and the police were

eventually called. On September 28, the complainant's father found her driver's license in her mailbox.

Defendant claims that the trial court erred by allowing expert testimony concerning a blood type test.

Robert Avery, a lab scientist who analyzed body fluids, testified at trial that a seminal stain was found on the interior lining of the complainant's skirt. According to Avery, the stain was a type A secretion which could not have been secreted by the complainant because she was a type B secretor. Avery stated that defendant is a type A secretor.

Avery testified that from eighty to eighty-five percent of the population are secretors, defined as persons who secrete their blood grouping within their body fluids. Nonsecretors do not secrete their blood grouping within their body fluids. Avery testified that forty-three percent of all secretors, which would include defendant, are type A secretors. Thus, Avery concluded that defendant could not be eliminated as a possible source of the seminal stains found on the inside liner of the complainant's skirt, nor could between thirty-two and thirty-six percent of the rest of the population.

Defense counsel did not object to Avery's testimony.

At the present time, there is a split among the various panels of this Court which have considered the issue of the admissibility of blood typing tests such as admitted in this case. On the one hand, the test has been excluded by certain panels considering the issue. See *People v Sturdivant,* 91 Mich App 128; 283 NW2d 669 (1979), lv den 407 Mich 933 (1979), *People v White,* 102 Mich App 156; 301 NW2d 837 (1980), and *People v McMillen,* 126 Mich App 211; 336 NW2d 895 (1983).

On the other hand, several panels of the Court

have found blood typing evidence to be admissible. In *People v Camon,* 110 Mich App 474; 313 NW2d 322 (1981), lv den 414 Mich 859 (1982), evidence from a secretor test indicated that fluids present on the complainant's panties came from persons who were secretors with type A and type O blood. Blood and saliva samples revealed the complainant to be a type A secretor and the defendant to be a type O secretor. The Court observed that approximately thirty-six percent of the population at large are type O secretors.

The Court held that the trial court did not err in allowing the introduction of the evidence. The Court stated that, under MRE 401, the test of relevancy is whether evidence has any tendency to make the existence of any material fact more or less probable. *Camon, supra,* p 480. The Court also stated that the blood type evidence admitted at trial provided one additional circumstance contributing to the identification of the defendant, and that the objection of remoteness goes to weight and is more appropriately a matter for argument before the jury. *Id.*

The decision in *Sturdivant* was also rejected in *People v Horton,* 99 Mich App 40; 297 NW2d 857 (1980), vacated and remanded on other grounds 410 Mich 865 (1980). In *Horton,* seminal fluid found on a bedsheet was produced by a nonsecretor male, and the defendant, like twenty percent of the population at large, was a nonsecretor. In declining to follow *Sturdivant, supra,* the Court stated that the overwhelming majority of courts allow the use of blood grouping evidence in criminal trials. *Horton, supra,* p 50. The Court pointed out that the Court in *Sturdivant* based its decision on the provisions of the Paternity Act, MCL 722.716; MSA 25.496, banning the use of this sort of evidence in paternity proceedings except to

protect a putative father. *Horton, supra,* p 50. The statute was amended in 1982 to make blood type tests admissible, 1982 PA 129, § 1. The *Horton* Court did not find the reasoning of *Sturdivant* persuasive and stated that whatever legislative policies and considerations might have led to his rule do not affect the practices of the Court in criminal proceedings. *Id.* The Court said deposits of blood and other identifiable bodily substances do not differ from other pieces of physical evidence which show possible connections between defendants and criminal acts, and that the weight of such evidence is for the jury's determination. *Horton, supra,* p 51.

In *People v Thorin,* 126 Mich App 293; 336 NW2d 913 (1983), the Court stated that cases decided since *Sturdivant, supra,* and *Horton, supra,* have followed the *Horton* rationale. *Thorin, supra,* p 302. The Court concluded that the *Horton* rationale is the better view, stating that blood type evidence which places the defendant within the group of the population is relevant in that it does have some tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Thorin, supra,* p 303.

The cases allowing the introduction of such testimony are persuasive. However, we point out that, standing alone, such testimony without any other strong admissible evidence tending to show the defendant's guilt would indeed be inadmissible. We stated in *McMillan* that admission of such evidence was error, but harmless error because the defendant was identified by the complainant. Here, we are going a step further and departing from the *McMillan* approach and we find that admission of the blood typing evidence is not error when there is other competent evidence linking defen-

dant to the crime, when the jurors have been properly cautioned about the use of such evidence in their deliberations, and when a proper foundation has been laid for admission of such evidence.

In this case, the complainant positively identified the defendant as her assailant. Fibers from the blue sweatshirt worn by defendant on the day of the attack were found on the complainant's skirt. Fibers from a yellow blanket at the alleged site of the rape were found on the complainant's skirt. Fibers from the defendant's sweatshirt were also found on the complainant's blouse. The defendant also told police officers that he committed the crime.

The defendant told his cousin, Noel Nerio, that he had picked up a woman and her child, brought them to his apartment, and raped the woman. Nerio testified that defendant told him that he had taken money from her, forced his way into her car, and blindfolded her with a shirt. Barney Nowicki, a friend of the defendant, testified that in late September defendant said that he took from a lady with a child ten dollars and her driver's license, which he said he would give back to her in the future. Nowicki testified that defendant showed him the license and later told him that he had put in her mailbox. Karen Gutierrez, a friend of the defendant, testified that defendant told her that he had taken a woman's driver's license so that she would not go to the police, and that he later took it to her house and put it in her mailbox. Gutierrez further testified that defendant told her that he had taken ten dollars from the woman, that the incident happened at around 5:00 A.M. and that a little girl was with the woman.

Finally, the complainant testified that defendant told her that if she did not go to the authorities he would return her driver's license to her. The com-

plainant's father found the license in the mailbox on September 28. Eva Hartung testified that around noon on September 28 she observed defendant in his car near the complainant's apartment complex.

We believe that the evidence here was relevant under MRE 401 since it placed defendant within a smaller group of the population which could have committed the rape. The evidence here significantly narrowed the number of people who could have committed the rape. We agree with the *Horton* Court that the weight to be given to such evidence is for the jury's determination. The objection of remoteness goes to weight and is more appropriately a matter for argument before the jury. *Camon, supra,* p 480.

The danger of unfair prejudice does not outweigh the probative value of the evidence. As the Court in *People v Goree,* 132 Mich App 693; 349 NW2d 220 (1984), points out, MRE 403 does not exclude evidence because it simply prejudices the cause of the objecting party, but, rather, excludes only unfairly prejudicial evidence. Any unfair prejudice created by the introduction of such evidence can be eliminated by proper cross-examination, argument, instructions by the court, and the jury's common sense. *Goree, supra,* p 703. These precautions should prevent the jury from placing undue emphasis on such testimony and enable it to put the evidence in its proper statistical light. In our opinion, such precautions will prevent any unfair prejudice and lead the jury to recognize that blood typing evidence is not conclusive of the defendant's guilt but only increases the probability of that fact.

We do note that, as the Court in *Horton, supra,* p 50, and *Thorin, supra,* p 302, pointed out, the majority of courts considering this issue have al-

lowed the introduction of blood grouping evidence in criminal trials. We, likewise, hold that such evidence is admissible when there is other competent admissible evidence and the safeguards mentioned in this opinion are present.

The next question is whether the defendant's threat to hurt the complainant if she reported the rape to the police constitutes extortion, MCL 750.213; MSA 28.410.

The complainant testified that as they were leaving the apartment defendant asked her name and address and that she told him her name and an incorrect address. She testified that defendant told her that if she reported the incident to the authorities he would come after her and her daughter and hurt them. When in the car, defendant took her driver's license and address book from her purse and told her that if she did not report the attack to anybody, he would mail the license back to her in a couple days. Otherwise, according to the complainant, defendant stated that he would hurt her or her daughter.

MCL 750.213; MSA 28.410 states:

> Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense, or shall orally or by any written or printed communication maliciously threaten any injury to the person or property or mother, father, husband, wife or child of another with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do or refrain from doing any act against his will, shall be guilty of a felony, punishable by imprisonment in the state prison not more than twenty [20] years or by a fine of not more than ten thousand [10,000] dollars.

In *People v Krist*, 97 Mich App 669, 676; 296

NW2d 139 (1980), lv den 409 Mich 936 (1980), the Court stated that prosecutions for statutory extortion have generally been characterized by threats of future harm if the victim does not comply with the extortionist's wishes.

Convictions affirmed.