PEOPLE v ROBERSON

Docket No. 90754. Submitted November 3, 1987, at Grand Rapids. Decided April 4, 1988. Leave to appeal applied.

Patrick D. Roberson was convicted of armed robbery and possession of a firearm during the commission of a felony, Cheboygan Circuit Court, Robert C. Livo, J. His defense had been intoxication. Defendant appealed, alleging (1) denial of a fair trial because of inappropriate questioning of a defense witness and improper argument, (2) denial of a fair trial because a defense expert witness withheld critical testimony in the mistaken belief that he could not testify on an ultimate issue of fact, (3) error in the trial court's giving, over defendant's objection, an instruction on defendant's election not to testify, and (4) that he is entitled to be resentenced because the court failed to consider intoxication as a factor in mitigation and erred in scoring the sentencing guideline variables.

The Court of Appeals *held:*

1. The prosecutor's questions and argument, if error at all, were harmless. The evidence of guilt was strong and the Court of Appeals was satisfied that not one juror would have voted to acquit even absent the alleged errors.

2. Defendant's counsel indicated that he was satisfied with the court's handling of the expert who thought he could not give an opinion on an ultimate issue of fact. A defendant may not assign error to something which his own counsel deemed proper at trial.

3. The court's giving an instruction on defendant's election not to testify against defendant's wishes was error. However, in

REFERENCES

Am Jur 2d, Appeal and Error §§ 776, 777.
Am Jur 2d, Criminal Law §§ 527, 598, 599.
Am Jur 2d, Evidence §§ 320-335.
Am Jur 2d, Expert and Opinion Evidence §§ 1-7.
Am Jur 2d, Robbery § 46.
Am Jur 2d, Trial §§ 211-314.
Adequacy of defense counsel's representation of criminal client regarding argument. 6 ALR4th 16.

light of the overwhelming evidence of guilt, the error was harmless.

4. The jury rejected defendant's defense of intoxication. The court did not err in not considering it in mitigation of his sentence. Defendant's other allegations were without merit.

Affirmed.

1. CRIMINAL LAW — CLOSING ARGUMENT — PROSECUTORIAL COMMENT.

A prosecutor, as an advocate, is free, in closing argument, to relate the facts to his theory of the case and to argue the evidence and all reasonable inferences therefrom.

2. CRIMINAL LAW — EVIDENCE — OTHER CRIMES.

Evidence tending to establish an element of a charged offense is not rendered inadmissible simply because it also tends to show the commission of another crime as well.

3. CRIMINAL LAW — HARMLESS ERROR — APPEAL — COURT RULES.

Alleged error is, at most, harmless where the reviewing court is satisfied that, in light of all the evidence, not one juror would have voted to acquit defendant even absent the error (MCL 769.26; MSA 28.1096; MCR 2.613[A]).

4. WITNESSES — EXPERT WITNESSES — OPINION TESTIMONY — RULES OF EVIDENCE.

An expert witness may give an opinion on a certain matter even though it embraces an ultimate issue to be decided by the trier of fact (MRE 704).

5. APPEAL — PRESERVING QUESTION.

A defendant may not assign error to something which his own counsel deemed proper at trial.

6. CRIMINAL LAW — JURY INSTRUCTIONS — RIGHT NOT TO TESTIFY — HARMLESS ERROR.

An instruction on the defendant's right not to testify given over defendant's objection is error but is harmless in light of over-whelming evidence of guilt.

7. ROBBERY — SENTENCING — MITIGATING FACTORS — INTOXICATION.

A sentencing court need not consider intoxication as a mitigating factor when sentencing a defendant convicted of armed robbery where intoxication was defendant's defense at trial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Joseph P. Kwiatkowski,*

Prosecuting Attorney, and *Thomas C. Johnson,* Assistant Attorney General, for the people.

State Appellate Defender (by *Kim Robert Fawcett),* for defendant on appeal.

Before: WAHLS, P.J., and BEASLEY and D. A. BURRESS,* JJ.

D. A. BURRESS, J. On October 16, 1985, defendant Patrick Donald Roberson was convicted by a jury in the Cheboygan Circuit Court of the offenses of armed robbery, MCL 750.529; MSA 28.797, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). On December 12, 1985, defendant was sentenced to a mandatory two-year prison term for the felony-firearm conviction, and to from seven to twenty-five years for the armed robbery conviction. Those sentences were to be served consecutively. Defendant appeals his convictions and sentences as of right.

On May 21, 1985, at approximately 11:55 P.M., defendant entered a Clark gas station in Cheboygan, Michigan, just prior to closing and while the female attendant was counting the day's receipts. Defendant pointed a shotgun at her and demanded and was given the money. He then demanded more money from the station's safe. The attendant was unable to open the safe and convinced defendant of this fact only after demonstrating that each of her keys could not open the door. Defendant then made her toss the keys into a back room and ordered her to lie down next to them. Fearing she would be shot, she grabbed the gun and a struggle ensued following which the two stumbled out the door of the station and onto the pavement. Defendant repeatedly pushed the attendant's head

---

* Circuit judge, sitting on the Court of Appeals by assignment.

into the cement in an effort to wrestle the gun away. Defendant himself finally let go and stomped on the gun which was lying across the attendant's chest, causing it to discharge. Defendant then retrieved the money and fled the station without the gun.

At trial, the attendant positively identified the defendant and the shotgun used during the robbery. In addition to testifying to the foregoing facts, the attendant testified she saw defendant's hand near the gun's trigger, but not actually on it, and that throughout most of the robbery the gun was held at knee level although it was pointed in the attendant's direction. Finally, the attendant testified that defendant's eyes were noticeably bloodshot, although she did not smell alcohol, and that defendant did not seem intoxicated to her.

A neighbor who lived behind the gas station testified that he observed a "loud" car idling in front of his house at approximately 11:45 P.M. on the night of the robbery. There were two occupants in the vehicle, one of whom got out and walked toward the station. That person soon returned and got back into the car. The two occupants then conversed for a short time before the same person got out of the car again and returned to the station. A couple of minutes later the witness heard a gunshot and saw that same person running toward the car, which sped away after he got in. During the time the car was parked in front of his home, the witness had a view of the person's stature and clothing. The person was observed running and did not appear to be under the influence to the witness.

A second neighbor observed a suspicious older model blue car with a noisy muffler around midnight on the night of the robbery. A few minutes

later, he saw the young man slam the trunk of the car and get into the vehicle which then sped away.

Officers from the Cheboygan Police Department were dispatched to the scene of the robbery. Descriptions of the defendant and the vehicle were broadcast over the police radio after the witnesses were interviewed. An officer from the Tuscarora Township Police Department heard the broadcast and subsequently located the suspect vehicle in the vicinity of Indian River, Michigan. Backup assistance was called. Thereafter, with the assistance of two state police troopers, the suspect vehicle was stopped after it drove down a dead-end street in the village of Wolverine. Defendant was arrested.

The troopers testified that defendant did not appear to be intoxicated, did not have any trouble walking (even backward), and his actions were very deliberate. He was described as defiant and uncooperative. The other officer also testified that the defendant did not appear to be intoxicated.

The third state trooper who encountered defendant at the state police post after his arrest testified that defendant had a slight odor of alcohol but did not appear to be intoxicated.

The following morning the suspect's vehicle was searched and two partial rolls of coins were recovered. Also, defendant's clothes were confiscated as they matched the description given by the attendant. Both the coins and clothing were admitted into evidence at trial.

Defendant moved for a directed verdict following the close of the prosecution's case in chief, arguing that the proofs did not establish that the defendant had the requisite intent and present ability to injure, or the intent to permanently deprive the attendant of something of value. That motion was denied.

In his reserved opening statement, defense coun-

sel theorized that defendant's alcohol intake prevented him from forming the specific intent to commit armed robbery.

Eileen Jorgensen testified that defendant and her son, Casey, were at her house from 11:00 P.M. to 11:20 P.M. on May 21, 1985. She believed they had been drinking. She could smell alcohol on defendant and he talked very fast (which he did not normally do). On cross-examination, she stated that defendant was not falling-down drunk, did not stagger or pass out, and was able to carry on a sensible conversation.

Dr. Russell Wood, a clinical psychologist and director of Harbor Hall (a residential substance abuse clinic in Petoskey, Michigan), testified that defendant had received treatment in the past for approximately seven months. On cross-examination, the prosecutor questioned Wood about the type of patients the clinic received and elicited the response that a majority of the patients referred were prior felons. Defense counsel objected to this questioning on the ground that it was improper since, prior to trial, the judge had ruled that defendant's prior arrests or convictions could not be used except for impeachment purposes. The prosecutor withdrew the question conceding that it was unimportant.

Dr. Charles Laufer, a consultant who treated defendant during his stay at Harbor Hall, diagnosed defendant as having a borderline personality disorder and as being an alcoholic. Laufer gave extensive testimony regarding the implications and behavior patterns associated with alcoholism. When defense counsel asked Laufer about an alcoholic's ability to form a specific intent, the prosecutor objected, stating that the answer would embrace an ultimate issue for the jury. The objection was overruled. The question was again posed to

Laufer who stated that it was not for him to decide whether defendant had the specific intent (apparently he too was under the misconception that the evidence rules did not allow such testimony). Laufer then gave an opinion about alcoholics in general without referring to defendant in particular.

Following cross-examination of Laufer, and outside the presence of the jury, the court explained its prior ruling and offered to clarify the law in an instruction to the jury. Both counsel agreed that such instruction would suffice. Laufer was not again requested to opine as to defendant's ability to form the requisite specific intent.

The prosecutor called rebuttal witness Jay Geyer who had been with defendant until approximately 10:00 p.m. on the night of the robbery. Geyer said that defendant had been drinking but he was not so drunk as to have difficulty moving around.

During closing argument, the prosecutor argued that defendant's intoxication defense was without foundation because of the planning and execution of the robbery and because there was no physical appearance of intoxication. During rebuttal argument, the prosecutor stated, "I submit to you that at one point in time, when he told the victim to lie down, that he certainly wasn't going to leave any eyewitness behind—." At that point, defense counsel objected. The court permitted the argument for the reason that there was evidence at trial upon which to base it.

Over objection the trial judge instructed the jury regarding a defendant's election not to testify (CJI 3:1:06). The trial court indicated its belief that the instruction was mandatory when the defendant elected not to take the witness stand.

After deliberating for about forty minutes, the

jury returned its verdict finding defendant guilty of armed robbery, MCL 750.529; MSA 28.797, and felony-firearm, MCL 750.227b; MSA 28.424(2).

At defendant's sentencing hearing held on December 12, 1985, defense counsel alleged that two offense variables on defendant's sentencing information report had been misscored. First, counsel argued that the probation agent had erroneously scored defendant as though he was a leader in a multioffender situation instead of being an equal participant. Second, counsel asserted that the agent also erred in assessing points based upon bodily injury inflicted on the victim because there was no indication of such in the record. The court agreed with the probation agent's scoring, ruling that defendant was the leader and that the gas station attendant had been touched beyond that needed to commit the offense.

Defense counsel also argued that defendant's intoxication should serve to mitigate the severity of the offense and thereby reduce his sentence. The court disagreed with that argument, stating: "Alcoholism, I don't doubt that defendant is an alcoholic, but it's not an excuse for assaultive conduct. If it were an excuse, the jury would have so found."

On appeal, defendant raises four claims of error. We affirm both the convictions and the sentences which were imposed.

In his first issue defendant argues that he was denied a fair trial because of claimed inappropriate questioning of a defense witness regarding the referrals and funding of Harbor Hall since such questioning basically revealed to the jury that defendant was a convicted felon. He also argues that the prosecutor's argument that "defendant did not intend to leave an eyewitness behind"

unfairly prejudiced defendant and deprived him of a fair trial. We reject both arguments.

The prosecutor's closing was supported by the unobjected-to testimony of the attendant that she believed that defendant intended to shoot her. It is well established that as an advocate, the prosecutor may freely relate the facts to his theory of the case, and may argue the evidence, and all reasonable inferences therefrom. *People v Jansson,* 116 Mich App 674, 693; 323 NW2d 508 (1982). Here, the prosecutor was merely arguing the attendant's testimony that she believed defendant intended to kill her. Such testimony was certainly in evidence as no objection was made to the attendant's statement.

In *People v Tarpley,* 41 Mich App 227, 235; 199 NW2d 839 (1972), this Court held that it was error for a prosecutor to make a remark which is (1) outside the scope of the charges against the defendant, and (2) outside the scope of the testimony which had been presented. *Tarpley* is distinguished from the instant case since the prosecutor's remark was not outside the scope of the testimony.

Furthermore, the prosecutor's remark was not erroneous because it tended to establish one or more of the elements of the crime charged, to wit: the specific intent to permanently deprive the attendant of the money and the intent to commit immediate bodily harm. MCL 750.529; MSA 28.797; CJI 18:1:01; *People v Joeseype Johnson,* 407 Mich 196, 210; 284 NW2d 718 (1979); *People v Harris,* 82 Mich App 135, 137; 266 NW2d 477 (1978). Testimony tending to establish the elements of an offense is not rendered inadmissible simply because it may tend to show the commission of another crime as well. *People v Savage,* 225 Mich 84, 86; 195 NW2d 669 (1923); *People v Cas-*

*tillo,* 82 Mich App 476, 479; 266 NW2d 460 (1978). Additionally, any unfair prejudice resulting from the admission of the attendant's testimony, or the prosecutor's reference thereto, could have been eliminated by proper cross-examination, argument, instructions by the court, and the jury's common sense. *People v Trevino,* 155 Mich App 10, 17; 399 NW2d 424 (1986); *People v Goree,* 132 Mich App 693, 703; 349 NW2d 220 (1984).

Defendant further argues in this issue that he was denied a fair trial because of the prosecutor's questioning of defense witness Russell Wood, director of Harbor Hall, the substance abuse clinic. The prosecutor elicited testimony from Wood that a high percentage of his patients were referred to him through the probation and parole offices and were convicted felons. The prosecutor's questioning continued for a substantial period of time before defense counsel interjected an objection. Upon hearing the objection, the prosecutor withdrew his question, saying, "I didn't think it was that important, anyway."

Defendant now argues that that questioning was improper because it effectively revealed to the jury that defendant had a prior criminal record. This, defendant asserts, violated the trial court's earlier ruling that his prior convictions could be used only for impeachment purposes should he decide to testify, which he did not. We conclude that the prosecutor's questions, while improper, did not result in unfair prejudice to defendant.

A review of the prosecutor's questioning as a whole reveals that it initially started out as an effort to impeach Wood, i.e., to show that the witness had a financial interest in concluding that defendant was an alcoholic. Therefore, the questions were relevant to the matter at issue (Wood's credibility) and were admissible. MRE 402. As the

prosecutor's questioning continued, though, it focused on the fact that a high percentage of Wood's patients were convicted felons. The final question, as it pertained to the source of Wood's referrals in general, was irrelevant; as it pertained to defendant in particular, the question was not only irrelevant but was more prejudicial than probative. It may also have violated the trial court's pretrial order that defendant's prior convictions could be used only for impeachment purposes. Thus, the question should have been excluded. MRE 402, 403. However, for several reasons, the prosecutor's question was not unfairly prejudicial.

Defense counsel only objected to the prosecutor's final question. No objections were made to the earlier questions which essentially revealed the substance of the testimony of which defendant now complains. Hence, the objection came too late. Had an objection been voiced earlier, the error now complained of could have been avoided. Additionally, a cautionary instruction to the jury, if requested, could have removed any taint resulting from the improper questions and the answers thereto. Defense counsel's failure to request such an instruction cannot elevate the improper questioning to the level of unfair prejudice. See *Trevino, supra,* p 17; *Goree, supra,* p 703. Finally, to the extent that the prosecutor's questions themselves insinuated that defendant was a "bad man" because he was referred to Wood as a patient, any prejudice arising therefrom was dispelled by the court's instructions to the jury. The court charged the jury that the statements or arguments of the attorneys were not evidence and should be disregarded if not supported either by the evidence or by the jury's general knowledge or experience.

Assuming arguendo that the prosecutor's remarks during closing argument or questioning of

Dr. Wood were erroneous, that error was, at the most, harmless. The evidence of defendant's guilt in this case was overwhelming. The attendant testified that defendant entered the gas station and robbed her at gunpoint. She gave a very detailed description of her assailant which ultimately contributed to defendant's arrest. She unequivocally identified defendant at trial as the robber. Two neighbors observed the car in which defendant was riding as being in back of the gas station at the time of the robbery. Their description of the car also contributed to defendant's arrest. A subsequent search of the car turned up two partial rolls of coins which were taken during the robbery. Defendant's shotgun, which the attendant managed to wrestle away from defendant during their struggle, was also admitted into evidence.

Defendant does not dispute the mountain of evidence, both direct and circumstantial, against him. Rather, his sole defense was that intoxication prevented him from forming the specific intent necessary to sustain a conviction of armed robbery. However, the evidence at trial that defendant was not intoxicated was very strong, while the evidence that he was intoxicated was very weak. Every prosecution witness who observed defendant around the time of the robbery, from the attendant and the neighbors to the arresting police officers, testified that defendant did not appear intoxicated. He was able to run, walk, and stand without so much as a stumble or stagger. He was able to communicate coherently and was aware of what was going on around him. Only defense witness Eileen Jorgensen and prosecution witness Jay Geyer gave testimony that defendant had been drinking just prior to the robbery. (Defense witnesses Wood and Laufer testified only as

to defendant's *past* alcoholism; they provided no evidence that he was intoxicated on the night in question.) Jorgensen's conclusion that defendant was drunk was based on the fact that he smelled of alcohol and was talking very fast, which was apparently out of character. An equally logical explanation for his rapid speech might be that he was nervous about the then impending robbery attempt. Even Jorgensen admitted, though, that defendant did not stagger, was not falling-down drunk, carried on a sensible conversation, and understood where he was. Geyer testified that defendant was not so drunk as to have difficulty moving around.

In light of the very strong evidence against defendant, and the fact that his sole defense was intoxication (which was very weak), this Court is satisfied that not one juror would have voted to acquit defendant even absent the complained-of errors. Therefore, the allegedly erroneous remarks and questions by the prosecutor were, at the most, harmless error. MCR 2.613(A); MCL 769.26; MSA 28.1096; *People v Swan,* 56 Mich App 22, 31; 223 NW2d 346 (1974), lv den 395 Mich 810 (1975).

In his next issue, defendant claims he was deprived of a fair trial because the defense expert witness withheld critical testimony because of the expert's uncorrected mistaken belief that he could not testify on an ultimate issue of fact.

During direct examination of Dr. Charles Laufer, the consultant with Harbor Hall and defendant's former doctor at the clinic, he was asked whether an intoxicated person was capable of forming a specific intent to act. The prosecutor objected to that question, arguing that it embraced an ultimate question for the jury to decide. The court overruled the objection, holding that Laufer had been qualified as an expert and, under the

rules of evidence, could give an opinion on the matter.

After again being asked about an intoxicated person's ability to form a specific intent, Laufer stated:

> I'm going to stay away from specific intent, leaving that to the trier of facts, because I think that smacks—I understand the law. I've read it, but it's not for me to decide. But I can answer that, at least a good portion of the question, and I can answer it as follows—

With that, the prosecutor objected on the grounds that the answer was unresponsive and outside the scope of the question asked. The prosecutor also argued that it was not the witness' function to explain the law. The court agreed with the prosecutor but let the witness' answer stand because counsel could bring out the truth by questioning the witness.

Defense counsel again questioned Laufer about the effect of alcohol on a person's ability to form a specific intent. Laufer answered as follows:

> I believe that in all probability, the person would not know what they were doing. The person would be functioning without due reason, without a rational, logical problem solving process going on: If I do this, then this will happen. If I do that, then that will happen. They just do it. It gets into their head and they block out, blot out, if you will, black out everything except what they're going to do. They don't know what they're doing and they do it, and it's out of their control. It came from whatever the thing was they were thinking just before it and just before that and just before that or whatever idea somebody put in their head.

Following this answer, defense counsel concluded

direct examination of Laufer, who was thereafter cross-examined by the prosecutor.

Upon completion of cross-examination, the trial judge initiated a discussion out of the jury's presence regarding Laufer's testimony. He stated that he wanted to avoid a witness' making a statement to the jury as to what the law is which does not conform to the law. He then asked whether either party desired to ask, or have him ask, questions of Laufer to clarify the matter to the jury. Defense counsel stated:

> Your Honor, I think that an inquiry or—Geez I would not want the jury to think that the witness violated their province, you know, defnitely [sic]. I wouldn't want to leave the jury with that impression, but I don't think, at this point, that they have the impression. So I don't think it's going to be necessary for anything further to be placed relative to that.

The judge volunteered that he would instruct the jury on the proper rule regarding expert witness testimony during jury instructions. Defense counsel replied, "That's fine, your Honor."

During final instructions to the jury, the trial judge gave the following instructions:

> I instruct you that testimony in the form of an opinion is for you to consider even though it embraces the ultimate issue to be decided by the trier of fact.
>
> \*   \*   \*
>
> In this case, Dr. Laufer has given his opinion as an expert in the field of alcohol addiction. An expert is permitted to give his opinion as to matters on which he is an expert. You are not bound to follow the opinion of any expert but may give it whatever weight you believe it deserves.

Defendant now claims that he was denied a fair trial because Dr. Laufer did not ultimately give an opinion as to whether defendant's intoxication affected his ability to form the specific intent necessary to sustain a conviction of armed robbery. A review of the record indicates there was nothing improper or erroneous, except for the witness' own initial belief that he could not testify as to a question of fact.

It is beyond dispute that an expert witness may give an opinion on a certain matter even though it embraces an ultimate issue to be decided by the trier of fact. MRE 704. Here, Laufer did just that. And, contrary to what defendant now asserts, Laufer's answer was responsive to defense counsel's question. Counsel asked the following hypothetical:

> If a person who is an alcoholic were to drink a quantity of alcohol, what affect [sic] would this or could this—Let's make that would this—would this have on his reasoning and thought process and ability to form a specific intent to do an act?

Laufer's response addressed that question specifically. Counsel never asked whether defendant, if intoxicated, would be personally able to form a specific intent. Certainly, error cannot be assigned to Laufer's testimony simply because he failed to address a question which was never posed to him.

Assuming defendant is now arguing that he was somehow prejudiced by Laufer's misstatement of the law in front of the jury (that he could not testify as to an ultimate issue of fact), we are satisfied that no error requiring reversal occurred.

Defense counsel was given an opportunity to further question Laufer so as to clarify the misstatement. Instead, counsel stated that he believed

that the jury was under no misconception. There-
fore, he thought it was unnecessary to do anything
more. Defendant should not be allowed to assign
error on appeal to something which his own coun-
sel deemed proper at trial. To do so would allow
defendant to harbor error as an appellate para-
chute. *People v Murry,* 106 Mich App 257, 262;
307 NW2d 464 (1981); *People v Brocato,* 17 Mich
App 277, 305; 169 NW2d 483 (1969).

Furthermore, the trial court, in its instructions
to the jury, cleared up any misconception the jury
might have had about Laufer's ability to testify as
to an ultimate issue of fact. The jury was told that
the witness could give an opinion on an ultimate
issue of fact but that it was the sole trier of fact
and that it may believe or disbelieve Laufer's
testimony. Thus, the jury was informed as to the
correct rule of law.

The Court is at a loss to find anything even
remotely prejudicial to defendant arising from the
course of events now complained of.

In his next claim of error defendant contends
the trial court committed error requiring reversal
when it gave a cautionary jury instruction on
defendant's election not to testify.

In his final instructions to the jury, the trial
judge gave the following instruction regarding
defendant's election not to testify:

> Every defendant in a criminal case has the
> absolute right not to testify. The defendant, Pat-
> rick Roberson, has no obligation to testify or to
> prove his innocence in any manner. You are not
> permitted to consider his silence in your delibera-
> tions, and his silence must not influence your
> verdict in any manner whatsoever.

At the conclusion of the jury charge, defense coun-

sel objected to the giving of the instruction, arguing that the judge disregarded counsel's previous request not to give the instruction (apparently, the request was made in chambers and not on the record). The judge explained that he believed the instruction was mandatory whenever a defendant did not testify, such as here.

Defendant now argues that the court's refusal to honor his request not to give the instruction was error. We agree. However, in light of the overwhelming evidence of defendant's guilt, the error was harmless; therefore, reversal of defendant's convictions is not required.

In *People v Hampton,* 394 Mich 437, 438; 231 NW2d 654 (1975), our Supreme Court, in a memorandum opinion, held that, in a criminal case where the defendant elects not to testify, the court may not instruct on the effect thereof if the defendant makes a timely request not to do so.

Unfortunately, the *Hampton* Court did not discuss the rationale behind its rule nor did it address the question of whether a trial court's instruction could ever be harmless error. However, in *People v Drew,* 83 Mich App 57, 62-63; 268 NW2d 284 (1978), this Court held that a trial court's instruction to the jury regarding the use of a defendant's prior conviction, despite the defendant's request not to give the instruction, was harmless error because the instruction favored defendant and the evidence adduced at trial was overwhelming in respect to his guilt.

In his final issue defendant asserts that he is entitled to be resentenced. Defendant raises two separate objections in this issue on appeal: he first claims the sentencing judge erred in refusing to consider intoxication as a mitigating factor; next he claims the sentencing judge erred in scoring defendant's sentencing guidelines variables in that

he had defendant intending to kill the attendant, using excessive force resulting in injury to her, and being the leader of the robbery. This Court is satisfied there was no error.

As to the argument that intoxication must be considered a mitigating factor, there is no merit to that argument under the facts of this case. By returning a verdict of guilty against defendant, the jury must have necessarily found that he was not legally intoxicated and that he was capable of forming the requisite specific intent.

Furthermore, defendant cites no authority in support of the proposition that intoxication is a mitigating factor to be considered in sentencing a defendant. A mere statement of position without citation of authority is insufficient to bring the issue before this Court. *People v Federico,* 146 Mich App 776, 797; 381 NW2d 819 (1985), lv den 425 Mich 867 (1986). The case cited by defendant, *People v Murray,* 72 Mich 10; 40 NW 29 (1888), dealt with a factual situation wholly distinguishable from the instant case. *Murray* involved a defendant accused of statutory rape, a crime in which there was no intent requirement, specific or general. Therefore, it was held that intoxication, while not a legal defense, could serve to mitigate the subsequent sentence imposed. Because armed robbery is a specific intent crime, though, intoxication is a legal defense. *People v Lakeman,* 135 Mich App 235, 240; 353 NW2d 493 (1984). Since the jury found defendant guilty of robbery, it must necessarily have rejected his claim of intoxication. Therefore, such should not serve to benefit defendant in sentencing.

As to defendant's assignment of error to the scoring of the sentencing guidelines variables, that too is without merit.

Affirmed.