*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 21, 2020

Plaintiff-Appellee,

v

No. 344437
Washtenaw Circuit Court
LC No. 17-000257-FH

SHAWN LARAY BELL,

Defendant-Appellant.

Before: BOONSTRA, P.J., and TUKEL and LETICA, JJ.

PER CURIAM.

Defendant, Shawn Laray Bell, appeals as of right his convictions and sentences for assault and battery, MCL 750.81, felon-in-possession of a firearm, MCL 750.224f, domestic violence, MCL 750.81(2), and witness intimidation, MCL 750.122(7)(c). He was sentenced as a habitual offender, MCL 769.11, to serve concurrent terms of 93 days for assault and domestic violence, and 100 months to 30 years for witness intimidation, but the sentence for witness intimidation was consecutive to the 50-month to 10-year term for felon-in-possession. We affirm.

## I. FACTUAL BACKGROUND

Defendant was tried twice for the events of March 2, 2017. At that time, defendant lived in the home of his girlfriend, CB, and her sons, RB and JB. CB did not testify at defendant's first trial. However, CB testified at the second trial that defendant became frustrated, then enraged, because he could not find his password for the computer. Defendant began yelling, calling CB names, and pacing. At one point, defendant attempted to grab CB and she hit her head on the microwave while evading him. He then slammed her head into the refrigerator while holding her by the throat. RB came into the kitchen and defendant became more aggressive. CB stated that RB called defendant a b****, and she then saw defendant lift up his shirt to show RB the handle of his gun. Defendant had pointed the gun at CB's head a couple of weeks earlier. CB yelled at defendant to leave and not to take the car. RB testified that he looked at defendant and defendant stated that he could see RB looking at him. Defendant pulled up his shirt to flash a gun at RB. RB felt afraid. Defendant then left in RB's car.

-1-

Defendant was charged with multiple crimes. At his first trial, he was only convicted of unlawfully driving away an automobile (UDAA), a felony.[1] The jury was unable to reach a verdict on the other charges.

The prosecutor opted to retry the unresolved counts and separately charged defendant with witness intimidation in Docket No. 2017-000757-FH based on threatening text messages that he had sent to CB in September 2017. Thereafter, the trial court granted the prosecutor's motion to join the two cases. Before the second trial, with defense counsel's knowledge, the prosecutor filed an amended information, striking the UDAA count because of defendant's earlier conviction and adding the witness-intimidation count. This was done so that the parties were "dealing with one Information" for trial. In March 2018, the jury found defendant guilty of domestic violence, assault of RB as a lesser included offense of assault with a dangerous weapon, felon-in-possession, and witness intimidation. This appeal follows.

## II. OTHER ACTS EVIDENCE

Defendant first argues that the trial court abused its discretion by admitting the threatening letters he sent to CB in March through May of 2017, in violation of MRE 404(b). Likewise, he argues that CB's testimony regarding prior acts of violence violated MRE 404(b). We disagree.

The issue of whether the letters were admissible was preserved.[2] Therefore, we review the trial court's decisions to admit the letters for an abuse of discretion, though preliminary questions of law regarding their admissibility are reviewed de novo. *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015).

MRE 404(b)(1) governs the admission of other acts evidence, and provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent,

---

[1] We affirmed defendant's conviction on July 17, 2018. *People v Bell*, unpublished per curiam opinion of the Court of Appeals, issued July 17, 2018 (Docket No. 341051).

[2] During an in-chambers conference and at trial, defendant only objected to the admission of the threatening letters on relevancy grounds, MRE 401. Thus, the question of whether the letters were admissible under MRE 404(b) would have been unpreserved. MRE 103(a)(1); *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993) ("An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground."). However, the prosecution's brief reveals that defendant filed a motion just before trial, seeking to exclude this evidence, in part, because it attempted to paint him "as a violent and assaultive person." This motion is not contained in the record below and, although we could read these comments as referencing MRE 403, rather than MRE 404(b), we will consider defendant's MRE 404(b) objection as preserved in light of the parties' agreement.

preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

To be admissible under MRE 404(b), other acts evidence generally must satisfy three requirements: (1) it must be offered for a proper purpose, (2) it must be relevant, and (3) its probative value must not be substantially outweighed by its potential for unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). A proper purpose is one other than establishing the defendant's character to show his propensity to commit the offense. *People v Vander Vliet*, 444 Mich 52, 74; 508 NW2d 114 (1993), mod 445 Mich 1205 (1994).

The trial court did not abuse its discretion in admitting portions of the threatening letters that defendant wrote to CB from jail in March, April, and May of 2017. Defendant's letters involve his alleged statements, as opposed to acts. "[A] prior statement does not constitute a prior bad act coming under MRE 404(b) because it is just that, a prior statement and not a prior bad act." *People v Rushlow*, 179 Mich App 172, 176; 445 NW2d 222 (1989), citing *People v Goddard*, 429 Mich 505, 518; 418 NW2d 881 (1988). Thus, defendant's letters were admissible as admissions of a party-opponent under MRE 801(d)(2)(A). Furthermore, demonstrating consciousness of guilt through such evidence is a proper noncharacter purpose under MRE 404(b). *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996) ("A defendant's threat against a witness is generally admissible. It is conduct that can demonstrate consciousness of guilt."); *People v Kelly*, 231 Mich App 627, 640; 588 NW2d 480 (1998). Finally, the trial court would not have abused its discretion in concluding that the prejudicial effect of this evidence did not substantially outweigh its highly probative value. MRE 403.

Turning to CB's testimony regarding defendant's prior actions and statements,[3] defendant recognizes no objection was made below, and, therefore, we review this unpreserved claim for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under the plain-error rule, a defendant may avoid forfeiture if he can establish that a clear or obvious error was made that prejudiced him by affecting his substantial rights. *Id*. Even when a defendant meets this burden we will not reverse the trial court unless the clear error resulted in an innocent person being convicted, or if it had a serious effect on the "fairness, integrity, or public reputation of judicial proceedings." *Id.* at 763-764 (quotation marks omitted).

---

[3] CB testified that defendant threatened to kill everyone in the house, threatened to film himself killing her grandchildren, and made other threats directed at her. CB also testified to defendant's physical violence against her, including choking, slapping, inflicting black eyes, causing swollen lips, and leaving visible marks on her neck. She further testified about how aggressive defendant became when angered and how intimidating he was. Defendant did object to CB's testimony that defendant was "an intimidating person," but only on the grounds that she did not have a proper foundation for that statement. Thus, this objection did not preserve defendant's MRE 404(b) challenge. MRE 103(a)(1); *Stimage*, 202 Mich App at 30. Moreover, this intimidation referred to defendant's prior physical actions, which we discuss in detail in this opinion.

Defendant cannot demonstrate that the admission of CB's testimony describing his prior acts of domestic violence was plainly erroneous. When a defendant is accused of an offense involving domestic violence, "evidence of the defendant's commission of other acts of domestic violence . . . is admissible for any purpose for which it is relevant, if it is not otherwise excluded under" MRE 403. MCL 768.27b(1). "This statutory language clearly indicates that trial courts have discretion to admit relevant evidence of other domestic assaults to prove any issue, even the character of the accused, if the evidence meets the standard of MRE 403." *People v Cameron*, 291 Mich App 599, 609; 806 NW2d 371 (2011) (quotation marks omitted). With the exception of the felon-in-possession charge, defendant was charged with offenses involving domestic violence. MCL 768.27b(6)(a)(*i*), (*ii*), and (*iv*).[4] Therefore, under the plain statutory language, "evidence of the defendant's commission of other acts of domestic violence" was conditionally admissible. MCL 768.27b(1). Specifically, CB's testimony about defendant's physical attacks before March 2, 2017, related to "other acts of domestic violence" under MCL 768.27b(6)(a)(*i*). Therefore, CB's testimony regarding defendant's prior threats and physical acts were substantively admissible under MCL 768.27b(1) "for any purpose for which [they are] relevant, if [they are] not otherwise excluded under" MRE 403. Thus, regardless of any issue with admitting CB's testimony under MRE 404(b)'s framework, it was admissible under MCL 768.27b(1).

"Although relevant, evidence may be excluded if its probative value [was] substantially outweighed by the danger of unfair prejudice." MRE 403; *Cameron*, 291 Mich App at 610. The term "unfair prejudice" in MRE 403 "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App at 611 (quotation marks omitted). Evidence "is unfairly prejudicial when the danger exists that marginally probative evidence will be given undue or preemptive weight by the jury." *Id.* (quotation marks, ellipsis, and brackets omitted). "[E]vidence offered against a criminal defendant is, by its very nature, prejudicial to some extent." *People v Propp*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 343255); slip op at 15 (quotation marks omitted). We have held that, "while the testimony of a defendant's former girlfriends about the defendant's physical abuse and threats to kill them was certainly damaging and prejudicial, it was also highly relevant to show the defendant's tendency to assault the victim as charged, and therefore admissible." *Id.*, slip op at 16 (quotation marks, ellipsis, and brackets omitted). The same is true in the instant case.

Additionally, as in *Propp*, even assuming that this evidence was unduly prejudicial, any error was harmless. *Jackson*, 498 Mich at 257. Here, there was enough other evidence that defendant committed the charged crimes that he cannot show the admission of this evidence was

---

[4] The assault charge against RB involved domestic violence because defendant put this household member in fear of physical harm by threatening RB with his gun. MCL 768.27b(6)(a)(*ii*), (*iv*), and (b)(*ii*). The domestic violence count is self-evident, and the witness intimidation was committed against CB, his significant other. MCL 768.27b(6)(a)(*i*), (*ii*), (*iv*), and (b)(*ii*) and (*iv*).

-4-

outcome-determinative. Notably, defendant sent CB threatening text messages in September 2017. CB testified that, in these texts, defendant told her that she was going to end up getting killed and said, "you know I'm a killer." Defendant threatened to kill CB and her family. Defendant told her that people were telling him what she was doing because they knew he was a killer. CB testified that she believed defendant[5] because his friends acted just like he did. He told her that he could get anything done, especially in Michigan, and she would not be safe. She believed him because this is not the first time something like this had happened in his life and she knew he would have it done. For these same reasons, defendant cannot demonstrate that the admission of CB's testimony regarding his prior acts and statements affected his substantial rights. *Carines*, 460 Mich at 763.

In short, what defendant refers to as the "other acts evidence" in this case was not substantially more prejudicial than probative, and there was no abuse of discretion in the trial court's admission of defendant's threatening letters, and no error, plain or otherwise, in admitting CB's testimony regarding defendant's past actions and statements.

Defendant also asserts that he did not receive notice of the "other acts" evidence under MRE 404(b). As we have explained, the applicable rules are MRE 801(d)(2) and MCL 768.27b. MRE 801(d)(2) contains no notice requirement. And, under MCL 768.27b(2), the prosecuting attorney must disclose the other acts evidence to the defendant, including witness statements or a summary of the expected testimony, not less than 15 days before trial, although a court may allow less notice for good cause shown. MCL 768.27b(2). As to defendant's earlier letters, the prosecution satisfied the notice requirement because defendant filed a motion to suppress them before his first trial. As to the other acts, as in *Jackson*, while it may have been error for the

---

[5] We reject defendant's argument that CB testified that defendant "was a killer and that 'he's done this before so [she] knew he'd have something done.' " Counsel has removed CB's testimony from its context and, in part, misquoted it. As already discussed, CB was explaining defendant's texts when she testified that defendant indicated that any man involved with CB in the future "might act like he has balls until he faces a killer like me L-O-L." Defendant further indicated that his companions "know [he's] a king and a killer." When asked how she interpreted defendant's message, CB responded: "He's a killer." Later, CB described defendant's friends as "all bugged out" and "acting the same way he [did]." For these reasons, CB believed defendant's threat.

In another text, defendant stated that he could "get anything done [that he] need[ed], especially violence." Defendant explained that so long as CB and her family were in Michigan, they were "not safe if [he] did not want [them] to be." Defendant added that he had previously saved them by telling others "not to whack your . . . trashy a****." When asked how she interpreted defendant's text, CB replied, "Exactly like it's written. . . . [I]t's not the first time something like this has happened in [defendant's] life, so I know [that defendant] would have something done."

Viewed in context, CB's testimony conveyed the fear defendant's threats instilled, not any personal knowledge that defendant had killed before.

prosecution to not to have provided notice, and for the trial court to not to have required it, "the defendant has not demonstrated that this error 'more probably than not . . . was outcome determinative' " for the reasons we have already discussed. *Jackson*, 498 Mich at 278.

### III. LESSER INCLUDED OFFENSE

Defendant next argues that the trial court erred and violated his due-process rights when it allowed the prosecutor to add misdemeanor assault to the verdict form as a lesser included offense of assault with a dangerous weapon absent advance permission from the court, when it was neither included in the jury instructions nor argued by counsel. We conclude that defendant waived any error, and, even if he had not, he cannot establish that plain error occurred from this unpreserved constitutional claim.

Before defendant's first trial, defense counsel proposed written jury instructions, including a request for the lesser-included offense, and provided a proposed jury verdict form reflecting the option of conviction on the lesser offense. The final jury verdict form from the first trial reflected this option as well. Before this trial, defense counsel again submitted proposed jury instructions and a proposed verdict form, containing his request for the lesser-included offense. Before closing argument, the prosecutor asked defense counsel to review the proposed jury verdict form that included the lesser-offense option. Defense counsel did not object. And, although appellate counsel is correct that the prosecutor did not specifically argue about the lesser-included offense, he is mistaken that no counsel presented argument because the record reflects that defense counsel informed the jury that it could "find the lesser included, and they'll be in the jury instructi[ons] of [sic] simple assault and battery." For these reasons, we reject defendant's suggestion that he lacked notice of the lesser-included offense. Instead, we conclude that defendant waived any error when the jury verdict form was consistent with his pretrial request and acquiescence during the trial. *People v Milstead*, 250 Mich App 391, 402 n 6; 648 NW2d 648 (2002), quoting *People v Roberson*, 167 Mich App 501, 517; 423 NW2d 245 (1988) ("Defendant should not be allowed to assign error on appeal to something which his own counsel deemed proper at trial. To do so would allow defendant to harbor error as an appellate parachute.").[6]

_____

[6] Although the record reflects that the jury instructions did not include a specific instruction for the lesser included offense of assault and battery, defendant's argument on appeal appears to be related to his alleged lack of notice regarding the lesser-included offense rather than the trial court's failure to instruct. MCR 7.212(C)(5); *People v Brown*, 239 Mich App 735, 748; 610 NW2d 234 (2000). However, even if defendant is separately challenging the trial court's failure to instruct, he waived any error because, when the trial court specifically inquired whether defense counsel was satisfied with the jury instructions, he responded: "Yes." Given counsel's affirmative response to the trial court's direct inquiry, any error was waived. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (defense counsel who clearly expresses satisfaction with a trial court's jury instructions, even those omitting an element of a crime, waives any error). Moreover, we do not view this case as involving a complete failure to instruct on the elements of the lesser-included offense because the jury instructions included a definition

## IV. HABITUAL FOURTH OFFENDER NOTICE

Finally, defendant argues that he is entitled to resentencing because the prosecution failed to include a habitual offender notice on the amended information that it filed three days before his second trial. Defendant explains that the register of actions in this case [Docket No. 2017-000257-FH] fails to reflect a copy of a circuit court information charging witness-intimidation. And, although defendant attaches a copy of the notice charging him as a fourth-felony habitual offender from Docket No. 2017-000575-FH, he maintains that he was convicted on the basis of the charges enumerated in the amended information filed three days before trial. We conclude that the prosecution provided timely notice of the habitual offender fourth sentence enhancement as to the witness-intimidation charge.

We review the issue of whether a defendant is entitled to resentencing based on irregularities regarding service of a habitual offender notice de novo. *People v Head*, 323 Mich App 526, 542; 917 NW2d 752 (2018).

In pertinent part, MCL 769.13 provides:

(1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under [MCL 769.10, MCL 769.11, or MCL 769.12], by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

(2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court. [*Head*, 323 Mich App at 543, citing MCL 769.13.]

The Michigan Court Rules contain a similar provision:

A notice of intent to seek an enhanced sentence pursuant to MCL 769.13 must list the prior convictions that may be relied upon for purposes of sentence

---

of battery and assault within the instruction for assault with a dangerous weapon and also within the domestic-violence jury instruction. See *People v Traver*, 502 Mich 23, 40 n 7; 917 NW2d 260 (2019) (distinguishing *People v Duncan*, 462 Mich 47, 57; 610 NW2d 551 (2000), which held that the trial court's complete failure to instruct the jury on the elements of the charged offenses was structural error requiring reversal).

enhancement. The notice must be filed within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived or eliminated as allowed under MCR 6.113(E) within 21 days after the filing of the information charging the underlying offense. [*Head*, 323 Mich App at 543; MCR 6.112(F).]

These notice requirements exist " 'to provide the accused with notice, at an early stage in the proceedings, of the potential consequences should the accused be convicted of the underlying offense.' " *Head*, 323 Mich App at 543, quoting *People v Morales*, 240 Mich App 571, 582; 618 Mich 10 (2000) (internal citation omitted). Failure to file the proof that the notice was filed "may be harmless if the defendant received the notice of the prosecutor's intent to seek an enhanced sentence and the defendant was not prejudiced in his ability to respond to the habitual offender notification." *Head*, 323 Mich App at 544 (citation omitted), citing *People v Walker*, 234 Mich App 299, 314-315; 593 NW2d 673 (1999).

In this case, while defendant accurately notes that there was no habitual offender notice filed in connection with the amended information filed on March 23, 2018, this does not negate the effectiveness of the earlier, timely-filed habitual offender notice. The plain statutory language does not require *re-filing* the habitual offender notice after an *amended* information is filed. Rather it requires filing a written notice of intent to seek an enhanced habitual offender sentence "within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense." MCL 769.13(1).

In 2004, our Supreme Court approved Washtenaw County's concurrent jurisdiction plan. Administrative Order 2004-2, Mich (2004), 470 Mich lxiv (2004). It authorizes district court judges to exercise the powers and jurisdiction of the circuit court to "conduct[] arraignments in criminal cases cognizable" therein. See Washtenaw Local Administrative Orders, 2004-02D. This process was followed in Docket No. 2017-000757-FH.[7] Thus, the district court, acting as a circuit court, arraigned defendant after holding his preliminary examination on October 17, 2017.[8] Three days later, on October 20, 2017, the prosecution timely filed its habitual offender fourth notice and proof of service in the witness-intimidation matter before the circuit court granted the prosecution's motion to join it with the pending counts in Docket No. 2017-000257-FH.[9] Defendant's ability to defend against the witness-intimidation charge with a fourth-habitual

---

[7] We take judicial notice of the preliminary examination transcript filed in Docket No. 2017-000757-FH. MRE 201.

[8] The record further reflects that when defendant was sentenced for his earlier UDAA conviction on October 17, 2017, the prosecutor explained that defendant had been bound over earlier that day on the witness-intimidation charge, a 15-year felony, and, because defendant was a "habitual fourth," he would be subject to a life sentence.

[9] Despite defendant's protestations at sentencing that he and his attorney had no notice of the habitual offender enhancement until a week before sentencing and defendant's accusations that his attorney was lying when he represented otherwise, defendant eventually conceded that the

-8-

offender notice was not compromised by listing the witness-intimidation charge in a single amended information for trial purposes. *Milstead*, 250 Mich App at 402 n 6.

Affirmed.

/s/ Mark T. Boonstra
/s/ Jonathan Tukel
/s/ Anica Letica

---

attorney initially appointed to represent him in Docket No. 2017-000257-FH provided him with notice of the habitual offender enhancement. At sentencing, the trial court noted that defendant himself had communicated with other witnesses that he was facing life imprisonment on the witness-intimidation charge and that defendant's status as a habitual offender was discussed during trial. The court's recall was accurate as, on the second day of trial, defendant testified that he was "facing life right now with the witness intimidation," and, after the jury was excused, defendant affirmed that he was facing a life sentence as a "fourth degree habitual."